**Kelvin R. HOLLAND, Petitioner,**

v.

**DEPARTMENT OF the AIR FORCE, Respondent.**

No. 93–3300.

United States Court of Appeals,
Federal Circuit.

July 20, 1994.

Steven M. Angel, Oklahoma City, OK, argued for petitioner.

Tamara Miller, Major, U.S. Air Force, Air Force Legal Services Agency, Arlington, VA, argued for respondent. With her on the

brief, was Norman F. Nivens, Lieutenant Colonel, U.S. Air Force.

Before ARCHER, Chief Judge,[1] COWEN, Senior Circuit Judge, and NIES, Circuit Judge.

ARCHER, Chief Judge.

Kelvin R. Holland appeals from a decision of the Merit Systems Protection Board (MSPB or board), sustaining the decision of the Department of the Air Force (Air Force or agency) to demote him from his position as Warehouse Worker Foreman to the position of Aircraft Freight Loader, *Holland v. Department of the Air Force*, 56 M.S.P.R. 592 (1993).[2] We reverse.

I.

Beginning in 1982, Holland occupied the position of Warehouse Worker Foreman, WS–6907–06, in the War Readiness/Mobility Support Unit, within the Base Supply Branch of the Directorate of Distribution at Tinker Air Force Base. This unit engaged in moving heavy equipment and supplies weighing anywhere from 25 to 300 pounds, and moving it quickly during times of alert, either exercises or actual emergency. The work, thus, entails heavy manual labor that must be done in very short periods of time.

In 1989, one of Holland's subordinates filed an Equal Employment Opportunity (EEO) complaint against Holland, alleging that he illegally discriminated against her in a job assignment on the basis of her sex and race. An EEO investigation ensued, as well as an investigation by Holland's second-level supervisor. It was found, and Holland does not dispute, that between 1984 and 1988, "on a number of occasions, he made statements to his subordinates and to potential employees that he believed that women in general were incapable of performing work in the [ware-

---

1. Chief Judge Archer assumed the position of Chief Judge on March 18, 1994.

2. On December 10, 1990, an administrative judge rendered an initial decision in Holland's case. By decision dated March 15, 1993, the full

board denied Holland's petition for review, reopened the case on its own motion, and affirmed and modified the initial decision of the administrative judge.

house] and that he would never hire a woman."[3]

In 1990 the Air Force proposed to demote Holland from the position of Warehouse Worker Foreman to Aircraft Freight Loader, WG–6968–07. Prior to the notice no specific counseling was given Holland. The notice of proposed action dated April 19, 1990, advised Holland that the

> reason for th[e] proposed [demotion] is your *failure to comply with management policies regarding equal employment opportunity*. This proposed action is taken in accordance with the general character and intent of *Cause of Action, Item 29b*, Attachment 3, AFR [Air Force Regulation] 40–750. [Emphasis added.]

Accompanying the notice were charges that Holland discriminated against two employees on the basis of their sex in 1984 and 1988, respectively, as well as setting forth Holland's statements regarding the inability of women in general to perform the warehouse work.

Item 29 of Attachment 3, AFR 40–750 (1982) (Discipline and Adverse Actions), referenced in the notice given Holland, proscribes certain discrimination including discrimination on the basis of sex and sexual harassment:

> 29a. *Discrimination* based on race, color, religion, *sex*, national origin, age, or handicapping condition. Includes *sexual harassment*. Also includes making racial or ethnic slurs, or disseminating literature containing such slurs. Consider circumstances and the effect on the person(s) *discriminated against*, use of abusive language, violent treatment, or insulting demeanor. [Emphasis added.]
> Penalty for First Offense: Reprimand to 5–Day Suspension.

Item 29b, specifically listed in the notice given Holland, provides more severe penalties for discrimination under Item 29a that is intentional or committed by a supervisor or manager:

> 29b. If *the discrimination* was *deliberate*. NOTE: If a *supervisor* or manager has engaged in *an act of discrimination*, a decision should be made as to whether he or she should be reassigned or changed to a lower grade to a position of a different character. [Emphasis added.]
> Penalty for First Offense: Reprimand to Removal.

Effective August 19, 1990, Holland was demoted, and he appealed his demotion to the MSPB. At a hearing before an administrative judge (AJ) of the MSPB, the agency dropped its two charges that Holland discriminated against two employees, and stipulated that it was relying solely upon the statements made by Holland to support its demotion action. The agency alleged that Holland's statements themselves violated its EEO policy. At the hearing, the agency's deciding official was asked what EEO policy was violated:

> Q: Which Air Force policy did [the appellant] fail to carry out?
>
> A: He failed to carry out the Air Force policy on equal opportunity.
>
> Q: And what is that policy?
>
> A: That policy is that we as Air Force members can not discriminate [sic] any employee based on their sex, in this case.

56 M.S.P.R. at 595–96 (bracketed material in original).

The AJ found that Holland's statements of belief were actionable misconduct because they violated the "agency's EEO policies." The AJ also found that the agency's demotion on the basis of Holland's statements did not violate Holland's right of free speech guaranteed by the First Amendment of the Constitution. Finally, the AJ found that demotion was a reasonable penalty despite Holland's 23 years of service with the agency, eight of those years as supervisor, and Holland's lack of prior disciplinary record. The AJ found that the demotion was justified because it was within the range of penalties

---

**3.** The evidence presented by witnesses reflects that Holland made nine to eleven statements to such effect to male and female job interviewees, subordinates and co-workers, including the deciding official, between 1984 and 1988. Holland admits that his personal opinion was well known at the base.

permitted by Item 29b and because Holland demonstrated a pattern of failing to comply with EEO policies by making his several statements over the four year period.

The full board denied Holland's petition for review but reopened Holland's appeal on its own motion. *See* 5 C.F.R. § 1201.117. The full board found that, contrary to the testimony of the deciding official, violation of the EEO policy relied on by the agency did not require discrimination "against some individual based on her sex, which would require proof that [Holland] took some discrete personnel action against someone, or at least that he created a hostile working environment." Rather, in the board's view, Air Force Regulations (AFR) 40–701 and 40–713, and Air Force Pamphlet 40–11, which had been offered in evidence before the AJ, "spell[ed] out [the agency's] EEO policy in some detail." These documents, the MSPB found, contained statements that are "clearly broad enough to encompass and proscribe a supervisor's statements to employees and applicants for employment that he does not believe women are capable of doing the work in his section, and that he does not intend to hire any women, even in the absence of proof that he has acted on those statements in particular personnel actions."

As specific examples of how the documents clearly encompass and proscribe such statements, the MSPB cited AFR 40–701(5)(d) (1978) (Employee–Management Policy), which states that supervisors "will ... [s]upport the equal employment opportunity action program (AFR 40–713)"; AFR 40–713(2)(b) (1986) (Equal Employment Opportunity and Affirmative Employment Programs), which says that the purpose of the EEO program is to "facilitate opportunities for the employment and advancement of underrepresented groups in the work force," and that supervisors should "mak[e] EEO considerations an integral part of the management process"; and AF Pamphlet 40–11 (1981) (Air Force Civilian Standards), which says that "it is Air Force policy ... that women ... are represented in all grades and

occupations in the civilian force to the extent they are available in the labor market."

Finally, the board upheld the penalty based on the fact that Holland had reasserted his "inappropriate attitudes" at the oral reply to the proposed notice of removal. This final statement by Holland, in the board's view, "implied that [Holland] would continue his noncompliance with agency policy in the future," such that nothing short of demotion would "vindicate the agency's interests."

Holland appeals.

## II.

Our standard of review in this case is established and limited by statute. The decision of the MSPB must be affirmed unless we find it to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. § 7703(c).

Holland does not dispute that he made the statements he was alleged to have made, but rather contends that they do not support the agency's demotion action.[4] As the AJ found, the particular regulations Holland was charged with violating implement in this context Title VII of the Civil Rights Act of 1964, which makes it "an unlawful employment practice for an employer ... to *discriminate* against any individual with respect to his *compensation, terms, conditions,* or *privileges of employment,* because of such individual's race, color, religion, *sex,* or national origin." 42 U.S.C. § 2000e–2(a)(1) (emphasis added). As the AJ correctly stated, this law requires supervisors to "treat all employees and applicants for employment in a manner free of discrimination when conducting all personnel actions." Further, as the Supreme Court has held, the language of the statute is not limited to "economic or tangible" discrimination such as "personnel actions," but further prohibits statements or conduct that creates a "discriminatorily hostile or abusive

---

4. Before the AJ, Holland denied that he intended his statements to apply to "all" women or that he said he would "never hire" a women. For pur-

poses of this appeal Holland accepts the AJ's finding as to the breadth of his statements.

environment." *Harris v. Forklift Sys., Inc.,* —— U.S. ——, ——, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993) (citing *Meritor Savs. Bank v. Vinson,* 477 U.S. 57, 64–66, 106 S.Ct. 2399, 2404–05, 91 L.Ed.2d 49 (1986)); *see Carosella v. United States Postal Serv.,* 816 F.2d 638 (Fed.Cir.1987).

Holland agrees that "at the point" his statements became discriminatory conduct "through *actual discrimination or through creation of a hostile work environment*" it would have been appropriate for the government to take action against him under the cited rules and regulations. Holland points out, however, that although the agency originally charged him with actual discrimination and demoted him based on these charges, these specific charges were dropped at the hearing before the MSPB, and that the agency thereafter has attempted to support its demotion action based solely on his statements of belief. Consequently, for purposes of this case, the agency accepts that Holland has never committed a specific discriminatory act against a woman, either by a personnel action or by creating a hostile work environment through statements or conduct towards a woman or about women generally.

Because Holland has not engaged in a discriminatory act against anyone on the basis of sex or sexually harassed anyone, or used abusive language, violent treatment, or insulting demeanor against "the person(s) discriminated against," there is no evidence that the provisions of Item 29a of AFR 40–750, Attachment 3, were violated. Necessarily, therefore, the provisions of Item 29b were not violated.[5] Likewise, there is no evidence that Holland violated the policy asserted by the deciding official as the actual basis for the agency's demotion action, that is "we as Air Force members can not discriminate."

The AJ made no specific findings to support her conclusion that Holland's "statements violate the agency's EEO policies and constitute actionable misconduct."[6] The full board found, and the Air Force argues, that AFR 40–713 and 40–701 and Pamphlet 40–11, are "broad enough to proscribe" Holland's statements. The Air Force first contends that the regulations and pamphlet "require [Air Force managers and supervisors] to make *personnel decisions* without regard, *inter alia,* to sex, and that are based solely on merit and fitness." Brief for Air Force at 12–13 (emphasis added). We fully agree. But in this case there is no assertion or evidence that Holland ever made even one "personnel decision" violative of this requirement. The Air Force then argues, and this seemingly is what the full board found, that Holland's statements are "unquestionably proscribed" by the regulations. With this we cannot agree.

The agency is alleging that Holland committed specific acts of misconduct each time he made a particular statement expressing a particular attitude, and that Air Force regulations prohibited such statements. The regulations cited by the MSPB and relied upon now by the Air Force say nothing about certain "statements" being prohibited. Nor do the cited regulations prohibit statements expressing beliefs regarding conduct which, if taken, would likely violate EEO regulations and statute. Besides dealing with discrimination, the cited regulations at most advise supervisors to "facilitate" and "support" the EEO program and its considerations. As we said in *Grubka v. Department of the Treasury,* 858 F.2d 1570, 1576 (Fed.Cir.1988), charges such as failing to "foster a positive EEO climate" or failing to "demonstrate a personal commitment to EEO principles" are so vague as to "cover[ ] everything and touch[ ] nothing," and their alleged violation does not support disciplinary action against an employee. Though this case differs from *Grubka* in that the Air Force and the full board have specifically identified EEO regu-

---

5. The AJ rejected Holland's reliance on Item 29a, finding that it was "misplaced," and that Item 29b *specifically addresses the situation where* "the violation is committed by a supervisor." However, "the violation" that the AJ speaks of is "the discrimination" prohibited in Item 29a. Thus, the fact that Holland has not discriminated excludes him from both Items 29a and 29b.

6. The AJ's opinion states:
   On review of all of the evidence of record, I find that appellant's global statements regarding the inability of women to perform the duties of a warehouseman in his unit and his determination never to hire a woman clearly contravene the agency's EEO regulations and policies and constitute actionable misconduct.

lations and portions thereof, those portions of those regulations say nothing more specific than what was held to be overly vague in *Grubka.*

We therefore conclude that the agency's charge is not supported by substantial evidence and is insufficient as a matter of law. Accordingly, we do not consider Holland's argument that the demotion was an unduly harsh penalty. Furthermore, we do not reach the question whether the cited Air Force regulations, if they supported Holland's demotion based on his statements of belief, would run afoul of the First Amendment. *See New York City Transit Auth. v. Beazer,* 440 U.S. 568, 582, 99 S.Ct. 1355, 1364, 59 L.Ed.2d 587 (1979).[7]

We conclude this somewhat odd case with the following epilogue. It was said at oral argument that after 1988, the date of Holland's last inappropriate statement, a woman had come to be under Holland's employ in the warehouse, a woman who possessed sufficient physical strength to perform the heavy lifting and quick transport required for work in the warehouse. The ignorance of his generalizations thereby having been proved to him, we were told that Holland has had a change in attitude.

*REVERSED.*

---

**7.** This moots the question whether Holland waived his First Amendment challenge by failing to raise it in his petition for review to the full board which petition was denied by the board. *See James v. Federal Energy Regulatory Comm'n,* 747 F.2d 1581, 1582–83 (Fed.Cir.1984) (no waiver) (distinguishing *Lizut v. Department of the Army,* 717 F.2d 1391, 1395–96 (Fed.Cir.1983) (waiver)).