**Severino A. DUPO, Petitioner,**

v.

**OFFICE OF PERSONNEL MANAGEMENT,
Respondent.**

No. 95–3088.

United States Court of Appeals,
Federal Circuit.

Oct. 31, 1995.

Rehearing Denied; Suggestion for Rehearing In Banc Declined
Dec. 21, 1995.

Severino A. Dupo, Philippines, Pro Se.

John K. Lapiana, Jeanne E. Davidson, and David M. Cohen, Department of Justice, Washington, DC, represented the respondent.

Before NIES, MICHEL, and CLEVENGER, Circuit Judges.

CLEVENGER, Circuit Judge.

Severino A. Dupo seeks review of a decision of the Merit Systems Protection Board, *Dupo v. Office of Personnel Management*, 64 M.S.P.R. 404 (1994), in which the Board affirmed a decision of the Office of Personnel Management (OPM), denying Dupo's request for a retirement annuity under the Civil Service Retirement Act (CSRA), 5 U.S.C. §§ 8331–8351 (1994). We affirm.

### I

Dupo was employed for three distinct periods at the United States Naval Station at Subic Bay in the Republic of the Philippines. From 1949 through 1951 and from August 1956 to September 1957, Dupo worked at the Navy Exchange as a waiter. From 1965 until his separation by a reduction in force on January 30, 1981, Dupo worked at the Naval Station's yacht basin, starting as a "Deckhand" and advancing to the position of a "Motorboat Operator Leader."

In an application to OPM, dated June 19, 1993, Dupo requested a deferred retirement annuity based upon his approximately 25 years of civilian service with the Department of Navy. On December 9, 1993, OPM denied Dupo's request for benefits, stating that Dupo had "never served in a position subject to the Civil Service Retirement Act." After Dupo requested reconsideration of his application, OPM again denied benefits, stating that Dupo's service was not creditable for retirement purposes because Dupo's service was with a nonappropriated fund instrumentality (NAFI).[1]

On February 2, 1994, Dupo appealed OPM's denial of his request for a retirement annuity to the Board. In an initial decision, dated June 15, 1994, the administrative judge (AJ) affirmed OPM's determination, concluding that Dupo's service was not creditable service. The AJ found that Dupo was employed by NAFIs throughout his entire career with the Navy. The AJ then stated that service with a NAFI is not generally creditable service, except that an individual serving in a NAFI may receive retirement credit, under 5 U.S.C. § 8332(b)(16) (1994), if the following criteria are met: (1) the service was performed between June 18, 1952, and January 1, 1966; (2) the service involved conducting one of a list of recreational activities for personnel of the armed forces; and (3) the individual seeking benefits was employed in a position subject to civil service retirement coverage on November 9, 1986. The AJ determined that Dupo satisfied the first requirement, but also determined that Dupo did not satisfy the second and third

---

1. A nonappropriated fund instrumentality is generally one to which the government has provided funds to initiate operations and the government loan is repaid out of the profits earned by the instrumentality's activity. The instrumentality is usually created by the government for the use of government personnel. Military exchanges and similar entities are the major type of NAFIs. *See* Act of June 19, 1952, Pub.L. No. 82–397, 66 Stat. 138 (1952).

requirements. In discussing the second requirement, the AJ stated, "There is no evidence ... indicating that [Dupo] conducted any of the activities specified by 5 U.S.C. § 8332(b)(16). Based on the nature of the positions he held, it is unlikely that he would have." As to the third requirement the AJ noted that Dupo was separated from service before November 9, 1986.

After the full Board denied Dupo's petition for review, the initial decision became the final decision of the Board. Dupo then sought review in this court.

## II

■ A decision of the Board must be affirmed unless we find it to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. § 7703(c) (1994); *see Holland v. Department of Air Force,* 31 F.3d 1118, 1120 (Fed.Cir. 1994).

## III

■ The CSRA entitles certain government employees to deferred retirement annuities. 5 U.S.C. § 8338. Typically, in order to be eligible for a retirement annuity under the CSRA, an individual must complete at least five years of "creditable" civilian service and must complete at least one year of "covered" civilian service in the final two years of employment. 5 U.S.C. § 8333(a), (b); *see Rosete v. Office of Personnel Management,* 48 F.3d 514, 516 (Fed.Cir.1995); *see also Herrera v. United States,* 849 F.2d 1416, 1417 (Fed.Cir.1988). Although most service in the federal government is creditable, *see Herrera,* 849 F.2d at 1417, service with a NAFI is not, as a general rule, creditable service for purposes of the CSRA. According-

ing to 5 U.S.C. § 2105(c) (1994), a NAFI employee is explicitly excluded from the definition of an "employee" for purposes of the laws administered by OPM, except where otherwise provided.[2] The CSRA is a law administered by OPM. *See* 5 U.S.C. § 8347(a).

Congress has, however, stated that, in limited circumstances, service with a NAFI may be creditable for purposes of the CSRA. The Nonappropriated Fund Instrumentalities Employees' Retirement Credit Act of 1986, Pub.L. No. 99–638, 100 Stat. 3535 (codified at 5 U.S.C. § 8332(b)(16)) (NFIERC), provides that the following service is creditable:

> service performed by any individual as an employee described in section 2105(c) of this title after June 18, 1952, and before January 1, 1966, if (A) such service involved conducting an arts and crafts, drama, music, library, service club, youth activities, sports, or recreation program (including any outdoor recreation program) for personnel of the armed forces, and (B) such individual is an employee subject to this subchapter on the day before the date of the enactment of [NFIERC].

Therefore, under the plain meaning of the statute, an individual who worked for a NAFI, as articulated in 5 U.S.C. § 2105(c), is entitled to civil service retirement credit for that service only if he or she meets the following criteria: (1) the service to be credited was performed for a NAFI between June 18, 1952, and January 1, 1966; (2) the service performed during that period involved conducting certain activities for personnel of the armed forces, as listed in 5 U.S.C. § 8332(b)(16); and (3) the individual was an employee subject to the CSRA on November 9, 1986.[3]

In the present case, Dupo has established that he performed service for a NAFI for at

---

2. Section 2105(c) states in pertinent part:

An employee paid from nonappropriated funds of ... instrumentalities of the United States under the jurisdiction of the armed forces conducted for the comfort, pleasure, contentment, and mental and physical improvement of personnel of the armed forces is deemed not an employee for purposes of—

(1) laws administered by the Office of Personnel Management, except—

....

(B) as otherwise specifically provided in this title.

3. The NFIERC was enacted on November 10, 1986. *See* 100 Stat. 3535, 3536.

least part of the period included in the first requirement of section 8332(b)(16). The Board found that Dupo worked for the Navy as a waiter from August 1956 to September 1957, and then worked as a "Deckhand" in the yacht basin at Subic Naval Base from April 19, 1965 through January 1, 1966. We note that Dupo's NAFI service prior to June 18, 1952, and after January 1, 1966, is not creditable service under section 8332(b)(16).

Dupo has not, however, established that he conducted any of the activities specified in section 8332(b)(16) during his NAFI service in 1956, 1957 or 1965. Although the legislative history gives little indication what Congress intended by the word "conducting" in section 8332(b)(16), by its plain meaning, the verb "conduct" means "to lead from a position of command" or "to direct the performance of." *Webster's Ninth New Collegiate Dictionary* 274 (1985). In *Suarez v. Office of Personnel Management,* 58 M.S.P.R. 639, 645 (1993), the Board interpreted "conducting" in section 8332(b)(16) to mean to "direct in action or course." The Board held that a NAFI accountant, who in addition to his duties contacted entertainers, arranged for them to perform at his Air Force base, and escorted them while on the base, did not conduct the type of activities described in section 8332(b)(16), and, hence, was not entitled to CSRA credit for his service with a NAFI. The Board concluded that "[a]dministrative or support workers, such as accountants, while no doubt essential to the operation of the [NAFI] activities, do not generally direct in action or course the particular activities." 58 M.S.P.R. at 645.

◼ Our analysis in the present case is similar to the Board's analysis in *Suarez.* Although Dupo worked for a NAFI as a waiter and a deckhand, there is no evidence that he led, managed or directed any of the recreational activities described in section 8332(b)(16). Merely participating or supporting a recreational activity does not constitute "conducting" such an activity. Therefore, we conclude that Dupo did not satisfy the second requirement of section 8332(b)(16).[4]

◼ Additionally, Dupo does not meet the third requirement of section 8332(b)(16). It is undisputed that Dupo was separated from NAFI service on January 30, 1981, and that Dupo has not been employed in any position of the civil service since then. Therefore, Dupo was not employed in a position subject to civil service retirement coverage on November 9, 1986.

### IV

◼ Dupo's service between 1952 and 1966 is not creditable under 5 U.S.C. § 8332(b)(16). Under 5 U.S.C. § 2105(c)(1), Dupo's other NAFI service is also not creditable for purposes of the CSRA. Since none of Dupo's service is creditable service, the Board did not err in affirming OPM's decision denying Dupo's request for a retirement annuity.

---

4. Our narrow interpretation of the second requirement in subsection 8332(b)(16) is consistent with the legislative history of NFIERC which shows that Congress intended subsection 8332(b)(16) to have a narrow scope. NFIERC addressed the problem that individuals who, between 1952 and 1966, worked in the "special services program" as "professionally trained recreation directors or professionally trained librarians" were not given retirement credit for their service because these individuals fell within the scope of 5 U.S.C. § 2105(c) and were, thus, excluded from the CSRA. *Legislation Extending Civil Service Retirement Credit: Hearing Before the Subcomm. on Civil Service, Post Office, and General Service of the Senate Committee on Governmental Affairs,* 99th Cong., 2d Sess. 18–24 (1986). Congress passed NFIERC to grant these individuals civil service retirement credit. Upon introducing NFIERC, Senator Stevens made statements indicating the narrow scope of NFIERC and the limited number of people to whom it would apply:

> These individuals, mostly women, conducted a variety of special services for the military including arts and crafts, drama, music, library, and recreational programs. The literature which encouraged these employees to consider special service positions could have led them to believe they were joining the civil service, and as such, they had no reason to think they would not be entitled to the retirement benefits enjoyed by other Federal workers. It is expected that approximately 200 individuals would be eligible to make the required deposit and receive retirement credit under this amendment.

132 Cong.Rec. 33,751–52 (1986).

No costs.

*AFFIRMED.*