**PACRIM PIZZA COMPANY,**
**Appellant,**

v.

**Robert PIRIE, Secretary of**
**the Navy, Appellee.**

No. 00–1534.

United States Court of Appeals,
Federal Circuit.

Sept. 23, 2002.

Robert M. Cambridge, of Arlington, Virginia, argued for appellant.

John N. Kane, Jr. Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for appellee. On the brief were Stuart E. Schiffer, Acting Assistant Attorney General; David M. Cohen, Director; Todd M. Hughes, and Paul D. Hoburg, Trial Attorney. Of counsel was Virginia G. Farrier, Attorney. Of counsel on the brief was Julius Rothlein, Attorney, Office of Counsel for the Commandant, U.S. Marine Corps., of Washington, DC.

Before MAYER, Chief Judge,
NEWMAN and BRYSON, Circuit Judges.

· MAYER, Chief Judge.

Pacrim Pizza Company appeals the decision of the Armed Services Board of Contract Appeals sustaining the contracting officer's default termination of its contract for noncompliance with the accounting and discrimination provisions. *Pacrim Pizza Co.*, 2000 WL 655951, ASBCA No. 51608, 00–2 BCA ¶ 30,928 (May 16, 2000). Because the nonappropriated funds doctrine bars our jurisdiction, we dismiss.

## Background

In June of 1993, Pacrim Pizza Company ("Pacrim") entered into a contract with the Morale, Welfare, and Recreation activity, a local, base level nonappropriated fund instrumentality, located at the Marine Corps Air Station in Iwakuni, Japan. Under the contract, Pacrim was to provide fast food services at the air station for a period of ten years. On March 31, 1998, the contracting officer terminated the contract for default based on Pacrim's violations of paragraph 7 requiring that Pacrim maintain daily accounting records of all transactions, and paragraph 27, the Equal Employment Opportunities clause, prohibiting discrimination in the form of sexual harassment. Pacrim appealed the termination to the Armed Services Board of Contract Appeals, which concluded that Pacrim was not in compliance with these provisions and sustained the termination. This appeal followed.

## Discussion

We have jurisdiction over appeals from final decisions of agency boards of contract appeals under 28 U.S.C. § 1295(a)(10), which requires that the contracts at issue be made pursuant to the Contract Disputes Act of 1978. *See G.E. Boggs & Assoc. v. Roskens*, 969 F.2d 1023, 1026 (Fed.Cir.1992) ("If the Contract Disputes Act does not apply to the Boggs contract ... this Court lacks jurisdiction over this appeal...."). The Contract Disputes Act, in relevant part, applies to "any express or implied contract (including those of the nonappropriated fund activities described in sections 1346 and 1491 of Title 28) entered into by an executive agency for-(2) the procurement of services." 41 U.S.C. § 602(a)(2) (2000). Sections 1346 and 1491 limit the covered nonappropriated fund instrumentality ("NAFI") contracts to express or implied contracts with "the Army

and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration." 28 U.S.C. §§ 1346(a)(2), 1491(a)(1) (2000). Contracts with NAFIs outside these enumerated exchanges are not covered by the Contract Disputes Act. *Furash & Co. v. United States*, 252 F.3d 1336, 1343 (Fed.Cir.2001) ("The parenthetical language [in 41 U.S.C. § 602(a)(2)] describes the military exchanges as 'the nonappropriated fund activities described in [the Tucker Act],' which implies that other non-appropriated fund activities are not included.").

Pacrim argues that we have jurisdiction under the Contract Disputes Act because its contract with the Morale, Welfare, and Recreation activity is included in the enumerated exceptions in that the contract encompasses services that are routinely performed by Marine Corps Exchanges. Besides, it says, the contract stated that it was subject to the Contract Disputes Act.

■ The question of whether contracts with Morale, Welfare, and Recreation entities fall within the enumerated exceptions for exchanges is a matter of first impression. The plain language of the statutes suggests that an entity which is not denominated a major exchange, is not covered under the Contract Disputes Act. *McDonald's Corp. v. United States*, however, holds that there are ·exceptions to this narrow construction. 926 F.2d 1126, 1133 (Fed.Cir.1991) (the Navy Resale and Service Support Office, which is responsible for and negotiates contracts on behalf of Navy exchanges, is included in the statutory exception for armed service exchanges). A NAFI may be a covered contracting entity under the Contract Disputes Act if it is closely affiliated with a post exchange and meets a three-part test:· it must have sufficient assets to reimburse the United

States the cost of a judgment, be clearly defined as within the resale system, and provide financial data sufficient to predict the government's potential liability. *Id.* at 1132–33.

■ *McDonald's* suggests that under this inquiry, "organization[s] serving the recreational needs of servicemen might not" "be considered within the enumerated category." *Id.* at 1132. Because Pacrim's contract was with a local Morale, Welfare, and Recreation entity with supervision and contracting structures separate and distinct from an exchange, the contract does not meet the *McDonald's* threshold requirement that the NAFI be· closely affiliated with a post exchange. Therefore, the three-part test does not come into play. In view of *McDonald's* and the requirement that statutory waivers of sovereign immunity be construed narrowly, *United States v. Nordic.Village, Inc.*, 503 U.S. 30, 34, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992), we conclude that the Morale, Welfare, and Recreation activity is not a covered entity, and that Pacrim's contract is not subject to the Contract Disputes Act.

We are not bound by board decisions, of course, but it is notable that the board has repeatedly interpreted *McDonald's* as holding that Morale, Welfare, and Recreation contracts are not so closely affiliated with exchanges as to be within the scope of the Contract Disputes Act. *See Atlantis Constr. Corp.*, 1995 WL 706997, ASBCA No. 44044, 96–1 BCA ¶ 28,045 (Nov. 21, 1995) (citing *McDonald's* for the proposition that a contract entered on behalf of the Morale, Welfare, and Recreation, and other entities with nonappropriated funds does not fall under the exceptions set forth in section 1346·or 1491(a)(1) of title 28); *Computer Valley Int'l, Ltd.*, 1993 WL 325120, ASBCA No. 39658, 94–1 BCA ¶ 26,297 (Aug. 13, 1993) (citing *McDonald's* to conclude that the Wiesbaden Communi-

ty Morale, Welfare, and Recreation Fund does not fall within the enumerated exchange exceptions); *see also Okinawa Sunset Recording Studio & Prods.*, 2000 WL 246622, ASBCA No. 52343, 00–1 BCA ¶ 30,804 (Feb. 28, 2000); *Recreational Enters.*, 1987 WL 40727, ASBCA No. 32176, 87–1 BCA ¶ 19,675 (Feb. 20, 1987).

Pacrim's argument that the Morale, Welfare, and Recreation activity is a covered entity because in this case the service for which it contracted fulfills functions similar to those of an exchange is also unpersuasive. The fact that the two types of entities may offer duplicative services does not affect our jurisdictional ruling in light of the structural distinctions between them.

Pacrim asserts that because the contract states that it is subject to the Contract Disputes Act, the government should be estopped from asserting a lack of jurisdiction. The contract contains two provisions relevant to our jurisdiction. First, paragraph 6, "Legal Status," in part states that "MWR contracts are United States contracts; however, they do not obligate appropriated funds of the United States except for a judgment or compromise settlement in suits brought under provisions of the Contract Disputes Act. . . ." This language does not render the contract subject to the Contract Disputes Act, but instead states that if the Act does apply, appropriated funds may be used to pay judgments. Because the Act does not apply here, this clause is not operative.

■ Second, paragraph 21(c), "Disputes," reads in relevant part that "[t]he decision of the ASBCA is final and conclusive except: (1) The contractor may appeal such a decision to the United States Court of Appeals for the Federal Circuit within one-hundred-twenty (120) days of receipt of a copy of the decision of the ASBCA." The government acknowledges this clause, but asserts it was included in error. It further explains that the language for future contracts of this type has been revised to omit such language. We recognize the awkwardness of the government's position, but only Congress can grant waivers of sovereign immunity; parties may not by contract bestow jurisdiction on a court. *See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701–02, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) (Federal court jurisdiction is "limited to those subjects encompassed within a statutory grant of jurisdiction. . . . [N]o action of the parties can confer subject matter jurisdiction upon a federal court."); *RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1461 (Fed. Cir.1998).

### Conclusion

Accordingly, the appeal is dismissed for want of jurisdiction.

### DISMISSED

NEWMAN, Circuit Judge, dissenting.

I do not agree that review under the Contract Disputes Act is foreclosed to this contractor. Whether an agency receives fees from activities it implements, and therefore engages in "non-appropriated fund activity," is not a criterion of access to the Contract Disputes Act.

The various statutes concerning non-appropriated fund instrumentalities have been interpreted as requiring the agency to pay its judgments without burdening the United States Treasury; but they do not exclude from contract remedy and judicial review this entire class of contracts. The Marine Corps, correctly interpreting its statutory responsibility, designated the Contract Disputes Act for review of disputes arising from this contract for restaurant services at the Marine base. I do not

share my colleagues' view that this provision is illegal and that judicial review of the asserted government breach is barred.

Thus the court dismisses this appeal, denying Pacrim Pizza the review that its contract with the Marine Corps explicitly grants. The court not only invalidates the "Disputes" clause in the contract, but deprives of judicial remedy all contractors who enter into contracts with any self-sustaining governmental activity except the military and NASA Exchanges. The governing statutes do not warrant this interpretation. Indeed, this interpretation defies the CDA's well-conceived structure of administrative and judicial review of contracts with the government, and cannot have been intended in the statutes on which the court relies.

*The Pacrim Pizza Contract*

Pacrim Pizza contracted to provide pizza, sandwiches, and related food items to the Marine Corps base in Iwakuni, Japan. The contracting arm of the Marine Corps was its Morale, Welfare, and Recreation activity, a so-called "non-appropriated fund instrumentality" because it is supported by revenue generated by sales or service fees (such as the fees paid by Pacrim Pizza), and thus does not receive congressional appropriations. *See Dupo v. Office of Personnel Management,* 69 F.3d 1125, 1127 n. 1 (Fed.Cir.1995).

The Pacrim Pizza contract stated that the Marine Corps will reimburse the Treasury for any adverse judgment, even as it recognized that suits may be brought under the Contract Disputes Act:

6. *LEGAL STATUS.* The Marine Corps Morale, Welfare and Recreation located at Marine Corps Air Station, Iwakuni, Japan is an integral part of the Department of Defense, and is a Non Appropriated Fund Instrumentality (NAFI) of the United States Government. MWR contracts are United States contracts; however, they do not obligate appropriated funds of the United States except for a judgment or compromise settlement in suits brought under provisions of the Contract Disputes Act (41 U.S.C. 601–613), in which event the Marine Corps MWR will reimburse the United States Government (31 U.S.C. 1304(c)).

The government recognized that contracts with non-appropriated fund instrumentalities "are United States contracts," and included the procedures of the Contract Disputes Act in the "Disputes" clause of the contract between Pacrim Pizza and the Marine Corps:

21. *DISPUTES.*

. . . .

b. All disputed claims relating to this contract will be decided by the contracting officer, . . . The contracting officer's decision will be final and conclusive unless:

(1) Within ninety (90) days from the date of the contractor's receipt of the contracting officer's final decision, the contractor mails or otherwise furnishes the contracting officer a written appeal (two copies) addressed to the Armed Services Board of Contract Appeals (ASBCA); or

(2) Within twelve (12) months from the date of the contractor's receipt of the contracting officer's final decision, the contractor brings an action in the United States Claims Court.

c. The decision of the ASBCA is final and conclusive except:

(1) The contractor may appeal such a decision to the United States Court of Appeals for the Federal Circuit within one-hundred-twenty (120) days of receipt of a copy of the decision of the ASBCA.

* * *

(3) ... the ASBCA decisions on questions of fact may be set aside only where the decisions are fraudulent, arbitrary, capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decisions are not supported by substantial evidence. The decisions of the ASBCA on any questions of law will not be final or conclusive as to the United States Court of Appeals for the Federal Circuit.

The court today holds that these rights are not available. The government stated at oral argument that inclusion of these clauses in the Pacrim Pizza contract was an error on its part, but that since the issue is jurisdictional it can be raised at any time and cannot be waived. Thus the government argued, and the court now holds, that judicial review is not available for the asserted breach of the Marine Corps MWR contract with Pacrim Pizza. However, as I shall discuss, the statutes do not bar judicial review of all contracts with self-sustaining governmental activities except for the military and NASA Exchanges. The legislation does not establish a regime whereby every other government activity that receives fees and supports itself is immune from review and from remedy under the Contract Disputes Act.

*The Relevant Statutes*

The relevant statutes are the Contract Disputes Act and the statutes that hold that the military and NASA Exchanges shall be treated like other United States agencies but shall reimburse the government for their judgments. The statutes do not thereby also provide that every contract with every other self-sustaining governmental activity is immune from judicial review.

The only reference to non-appropriated fund activities in the Contract Disputes Act appears in § 602(a):

41 U.S.C. § 602(a). Unless otherwise specifically provided herein, this chapter applies to any express or implied contract (including those of the non-appropriated fund activities described in sections 1346 and 1491 of Title 28) entered into by an executive agency....

The referenced sections of Title 28 relate to contracts with the military and NASA Exchanges, and state that contracts with the Exchanges are considered contracts with the United States. Section 1346 is the Little Tucker Act:

28 U.S.C. § 1346(a)(2). For the purpose of this paragraph, an express or implied contract with the [military and NASA] Exchanges shall be considered an express or implied contract with the United States.

Section 1491 defines the jurisdiction of the Court of Federal Claims, and includes:

28 U.S.C. § 1491(a)(1). For the purpose of this paragraph, an express or implied contract with the [military and NASA] Exchanges shall be considered an express or implied contract with the United States.

These provisions do not remove contracts with other United States non-appropriated fund entities from the Contract Disputes Act; they simply say that Exchange contracts are considered contracts with the United States. Other statutory provisions do not exclude all other non-appropriated fund instrumentalities from the Contract Disputes Act; the statute-based difference is in who pays the judgment, not in whether there is judicial review. Section 1304(c) of Title 31 states that when a judgment is rendered against an Exchange, the government shall be reimbursed by the Exchange:

31 U.S.C. § 1304(c)(1). A judgment or compromise settlement against the Government shall be paid under this section and sections ... when the judgment or settlement arises out of an express or implied contract made by-

(A) the Army and Air Force Exchange Service;

(B) the Navy Exchanges;

(C) the Marine Corps Exchanges;

(D) the Coast Guard Exchanges; or

(E) the Exchange Councils of the National Aeronautics and Space Administration.

(2) The Exchange making the contract shall reimburse the Government for the amount paid by the Government.

Paragraph 6 of the contract with Pacrim Pizza similarly requires the Marine Corps MWR to reimburse the government. Section 1304(c) of Title 31 neither prohibits nor requires non-appropriated fund instrumentalities other than the Exchanges to reimburse the government. Nor does § 1305(c) remove contracts with all other non-appropriated fund instrumentalities from the Contract Disputes Act.

Neither the Contract Disputes Act nor the corollary jurisdictional statute of the Federal Circuit states the exclusion of all other non-appropriated fund instrumentalities:

28 U.S.C. § 1295(a) The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction—

\* \* \* \*

(10) of an appeal from a final decision of an agency board of contract appeals pursuant to section 8(g)(1) of the Contract Disputes Act of 1978 (41 U.S.C. 607(g)(1)).

Section 607(g)(1) of the Contract Disputes Act in turn provides:

41 U.S.C. § 607(g)(1). The decision of an agency board of contract appeals is final unless appealed ... [setting 120 days for appeal to the Federal Circuit].

The Contract Disputes Act contains no exclusion from appeal to the Federal Circuit for non-appropriated fund instrumentalities.

Further, the jurisdiction of the agency boards, provided in § 607(d), draws no distinction between appropriated fund and non-appropriated fund instrumentalities:

41 U.S.C. § 607(d). Each agency board shall have jurisdiction to decide any appeal from a decision of a contracting officer (1) relative to a contract made by its agency, and (2) relative to a contract made by any other agency when such agency or the Administrator has designated the agency board to decide the appeal. In exercising this jurisdiction, the agency board is authorized to grant any relief that would be available to a litigant asserting a contract claim in the United States Court of Federal Claims.

I cannot find in the Contract Disputes Act, or any other statute, the exclusion from the Contract Disputes Act of all contracts with non-appropriated fund instrumentalities other than the Exchanges. As I have noted, the contract between the Marine Corps and Pacrim Pizza provides that "MWR contracts are United States contracts" and that "in suits brought under provisions of the Contract Disputes Act the Marine Corps MWR will reimburse the United States Government," citing 31 U.S.C. § 1304(c).

The government argues that the reference to the Exchanges in § 602(a) and § 1304(c) means that contracts with all other non-appropriated fund instrumentalities are excluded from judicial review. It strains belief that Congress intended to legislatively bar review of all such breach-

**1298**

es by the government. This interpretation leaves an apparently large number of contractors without access to the remedy for which the Contract Disputes Act was designed. This court rejected such an interpretation in *McDonald's Corp. v. United States*, 926 F.2d 1126 (Fed.Cir.1991). Declining to adopt today's theory, the court found that a contract with the Navy Resale and Services Support Office (NAVRESSO), a non-appropriated funds instrumentality that had contracted with McDonald's for restaurant services, was subject to suit under the Contract Disputes Act even though NAVRESSO was not an Exchange. The court explained that Congress did not intend to exclude contracts that could meet the "more sensible reading" that the court found in the legislative intent and summarized as follows:

> A more sensible reading [than that urged by the government] of the comprehensive and categorical listing in the statute is that found in the legislative history, where Congress indicated its intention to limit the waiver of sovereign immunity to a specific category of military organizations funded by resale activities which rendered them solvent and therefore able to support an adverse judgment without risk to the general treasury. The House Report lays out a three-part functional test that it applied in developing the category of organizations:

> > First, since not every nonappropriated fund activity has sufficient assets to reimburse the United States, the cost of the judgment would in some cases be imposed on the taxpayer—a result which is inconsistent with the very concept of nonappropriated fund activities.

> > Second, the broad inclusion of all nonappropriated fund activities might create serious definitional questions, making it difficult to predict the outer

limits of the liability of the Federal Government.

> > Third, data concerning all of the nonappropriated fund activities of the United States is unavailable. The Bureau of the Budget has not compiled such data nor can such data be obtained from the various Government agencies under which nonappropriated fund activities are conducted.

> Under this three-part test, we must conclude that a NAFI which lacks sufficient assets, is not clearly defined as being within the resale system, or over which the Government could not obtain financial data, would not be included in the statutory waiver.

*McDonald's*, 926 F.2d at 1132 (citation omitted).

The court in *McDonald's* did not hold that the NAFI must be "closely affiliated" with an Exchange; the court held that an activity with sufficient assets, clearly defined, and financially accountable, is subject to the Contract Disputes Act. The Marine Corps Morale, Welfare and Recreation arm is "funded by resale activities which [render it] solvent and therefore able to support an adverse judgment without risk to the general treasury," *McDonald's*, 926 F.2d at 1132, and meets the three-part test as fully as did NAVRESSO. There is no indication that the Marine Corps MWR cannot meet the judgment against it; it is clearly within the resale system (the government recognized that "both the exchanges and base-level MWR activities may conduct retail sales activity on Marine Corps bases," gov't brief at 10); and the Marine Corps MWR is administered by personnel "over which the Government [could] obtain financial data." I cannot discern a substantive difference between the solvency and accountability of NAVRESSO and the Marine

Corps MWR as would render the Contract Disputes Act available to contractors dealing with one and barred to those dealing with the other.

Our precedent directly supports the conclusion that the Contract Disputes Act applies to this contract—as the contract itself states. The court's contrary ruling diverges from precedent as well as from statute, and exacerbates the unfairness of the practice here illustrated. The government did not dispute at argument of this appeal that the contract clauses that the government now states were improperly included in this contract, are frequently used. It is a

travesty of fair dealing for our government to issue contracts that state that remedy is available under the Contract Disputes Act, but when a dispute arises to hold that the Disputes clause was included by governmental error, and that the promised judicial review is not available.[1] I respectfully dissent.

---

1. Despite the statement in the majority opinion, the briefs and argument record contain no governmental promise to change any NAFI contracts, existing and future, to avoid inclusion of Contract Disputes Act clauses like those in the Pacrim Pizza contract.