# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- ) | |
| ) | |
| Latifi Shagiwall Construction Company ) | ASBCA No. 58872 |
| ) | |
| Under Contract No. W91B4K-09-C-RP19 ) | |

APPEARANCE FOR THE APPELLANT:    Mr. Abdul Khalil Latifi
    Director

APPEARANCES FOR THE GOVERNMENT:    Raymond M. Saunders, Esq.
    Army Chief Trial Attorney
    CPT Harry M. Parent, JA
    MAJ John R. Longley, JA
    Trial Attorneys

## OPINION BY ADMINISTRATIVE JUDGE DICKINSON ON THE GOVERNMENT'S AMENDED MOTION TO DISMISS FOR LACK OF JURISDICTION

Appellant Latifi Shagiwall Construction Company (LSCC) seeks a total of $887,496 for three claims arising under Contract No. W91B4K-09-C-RP19. The government moves to dismiss the appeal for lack of jurisdiction on the basis of three alleged jurisdictional defects. Appellant opposes the motion. We grant the government's motion and dismiss the appeal for lack of jurisdiction.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. Contract No. W91B4K-09-C-RP19 was awarded to LSCC on 7 April 2009 for $1,135,457.15 to design and build a gravel road 8.5 kilometers long near the Valley of Pashagar, Nurgaram District, Nuristan Province, Afghanistan. The contract was awarded under the Commanders' Emergency Response Program (CERP), Purchase Request No. CERPJAF9F00142. (R4, tab 1)

2. The CERP is the successor of a program of humanitarian expenditures originally established by the Administrator of the Coalition Provisional Authority (CPA) expressly for the benefit of the Iraqi people and funded with Development Fund for Iraq (DFI) funds (R4, tab 51 [National Defense Authorization Act for Fiscal Year 2006 (NDAA FY06), Pub. L. No. 109-163, § 1202(e), 119. Stat. 3136, 3456 (2006)]; *see also* http://www.iraqcoalition.org/regulations/, Regulation 2). Upon dissolution of

the CPA on 28 June 2004[1], the CERP was established and funded with United States Government appropriated funds for the purpose of enabling United States military commanders in Iraq to respond to urgent humanitarian relief and reconstruction requirements within their areas of responsibility by carrying out programs to immediately assist the Iraqi people (R4, tab 51).[2] No later than December 2008 the CERP also funded humanitarian and reconstruction efforts for the benefit of the people of Afghanistan (R4, tab 50).

3. Congress expressed its intent that the CERP program was to be executed with a minimum of administrative functions (*see* H.R. Rep. No. 108-622 at 381 (2004)) and delegated significant authority to the Department of Defense (DoD) to craft regulations and procedures to exercise its CERP authority. Section 1201 of the Ronald W. Reagan National Defense Authorization Act for Fiscal Year 2005 granted the Secretary of Defense the authority to "waive any provision of law...that would (but for the waiver) prohibit, restrict, limit, or otherwise constrain the exercise of that authority." Pub. L. No. 108-375, § 1201(c), 118 Stat. 1811, 2078 (2004). This waiver authority has been continually extended to the present. *See, e.g.*, National Defense Authorization Act for Fiscal Year 2006, Pub. L. No. 109-163, § 1202(d), 119 Stat. 3136, 3456; Duncan Hunter National Defense Authorization Act for Fiscal Year 2009, Pub. L. No. 110-417, § 1214, 122 Stat. 4356, 4630 (2008); National Defense Authorization Act for Fiscal Year 2012, Pub. L. No. 112-81, § 1201(d), 125 Stat. 1298, 1620 (2011); National Defense Authorization Act for Fiscal Year 2014, Pub. L. No. 113-66, § 1211, 127 Stat. 672, 904-05 (2013). Further the Conference Report on the Fiscal Year 2005 authorization provided:

> It is the understanding of the conferees that the CERP program is currently being implemented pursuant to the guidance issued by the [Under Secretary of Defense] Comptroller on July 27, 2005.

H.R. Rep. No. 109-360 at 799 (2005). The Comptroller's 27 July 2005 guidance referred to in the conference report, above, was incorporated into Chapter 27 of Volume 12 of the DoD's Financial Management Regulation (FMR), DoD 7000.14-R, in September 2005 (R4, tab 52). Although the FMR was modified numerous times after September 2005, the January 2009 edition of the FMR, current at the time of award of the contract now at issue, retained all of the relevant language from the

---

[1] *See MAC International FZE*, ASBCA No. 56355, 10-2 BCA ¶ 34,591 at 170,513.

[2] After the dissolution of the CPA, there were still contracts awarded for the benefit of the Iraqi people which are funded by Government of Iraq funds, not U.S. Government funds, and which are identified as I-CERP contracts (*see* gov't mot., ex. 1 at 27-30; finding 4).

September 2005 edition. The January 2009 edition of the FMR states, in pertinent part:

## 2701 PURPOSE AND APPLICABILITY

....

270102. The CERP is designed to enable local commanders in Iraq and Afghanistan to respond to urgent humanitarian relief and reconstruction requirements within their areas of responsibility by carrying out programs that will immediately assist the indigenous population....

....

270104. The CERP may be used to assist the Iraqi and Afghan people in the following representative areas:

A.   Water and sanitation.

B.   Food production and distribution.

C.   Agriculture/Irrigation (including canal clean-up).

D.   Electricity.

E.   Healthcare.

F.   Education.

G.   Telecommunications.

H.   Economic, financial, and management improvements.

I.   Transportation.

J.   Rule of law and governance.

K.   Civic cleanup activities.

L.   Civic support vehicles.

3

M.   Repair of civic and cultural facilities.

N.   Battle Damage/Repair.

O.   Condolence payments.

P.   Hero Payments.

Q.   Former Detainee Payments.

R.   Protective measures.

S.   Other urgent humanitarian or reconstruction projects.

T.   Temporary contract guards for critical infrastructure.

270105.   This guidance applies to all U.S. Department of Defense (DoD) organizations and activities.  A requirement to comply with this guidance shall be incorporated into contracts, as appropriate to cover the execution, management, recording and reporting of expenditures of U.S. appropriations and other funds made available for the CERP....

....

2703 PROCEDURES

270301.   Improper Usage of Funds.  Appropriated funds made available for the CERP shall not be used for the following purposes:

A.   Direct or indirect benefit to U.S., coalition, or supporting military personnel.

(Bd. ex. 1)[3]  The United States Government commands in Iraq and Afghanistan[4] were required to publish in-theater guidance "to evaluate CERP projects and ensure that the projects meet the intent of the program" (*id.* § 270204).

_____

[3] The Rule 4 file contains the 2005 FMR (R4, tab 52) which had been superceded at the time of contract award.  A copy of the then-current 2009 FMR was received into the record as Board Exhibit 1 without objection by the parties.  The January 2009 FMR remains the current edition as of the writing of this decision.

4

4. The Joint Contracting Command-Iraq/Afghanistan (JCC-I/A) is responsible for contracting actions in-theater in Iraq and Afghanistan.[5] The JCC-I/A Acquisition Instruction (1 April 2009), in effect on the date of award of the contract now at issue, provided that:

> (a) CERP is a purchasing program "developed by MNF-I to enable commanders to respond to urgent humanitarian relief and reconstruction needs by executing programs that will immediately assist the indigenous population"....

> (b) The CERP program is broad in scope and may be effectively utilized for rebuilding critical infrastructure (food distribution, utilities, transportation, economic, education, and other areas). CERP funds shall not be used for the benefit to [sic] U.S. or coalition forces or for equipping/training of Iraqi/Afghan forces.

> ....

> (d) CERP is a battlefield tool that commanders can use to create an immediate effect on the ground. Congress and DoD recognized this and made sure only a minimum of rules apply to CERP. In keeping with the intent of the program, JCC-I/A policy is to streamline contracting processes to provide fast and effective support to the commanders.

> ....

> (f) No CERP...contract issued by JCC-I/A shall include any clauses by reference. All clauses shall be included in full text....

> (g) [The FAR does not apply to CERP contracts].

> ....

---

[4] Multi-National Forces-Iraq (MNF-I), later Multi-National Corps-Iraq (MNC-I), and Combined Joint Task Force (CJTF) in Afghanistan (Bd. ex. 1, § 270102; gov't mot., ex. 1 at 55).

[5] *See MAC International*, 10-2 BCA ¶ 34,591 at 170,514.

(j) CERP and I-CERP solicitation and award documents shall prominently include appropriate notification regarding the contracts not being FAR based. Use one of the following statements, as applicable for CERP...projects:

> **CERP**: *Any contract awards resulting from this solicitation are NOT subject to the Federal Acquisition Regulation of the United States Government, and are therefore not subject to the Contracts Disputes Act.*[6]

> **I-CERP**: *Any contract awards resulting from this solicitation will NOT be funded with monies appropriated by the Congress of the United States, are not subject to the Federal Acquisition Regulation of the United States Government, and are therefore not subject to the Contracts Disputes Act.*

(Gov't mot., ex. 1 at 27-30)

5. The contract contained the "CERP CONSTRUCTION CLAUSE" (R4, tab 1 at 18-30) and a Termination for Convenience clause (R4, tab 1 at 14). The contract contained no Disputes clause nor any other terms specifying a disputes process.

6. On 10 March 2011, after consideration of the contract terms, COR reports and LSCC input, contracting officer (CO) Morris memorialized his decision to terminate the contract for convenience:

> 1. ...The contractor has been paid 70% of the total contract price. The COR has estimated that the project is only 50% complete. The contractor claims to be at 96.6% complete and has asked for the remaining 26.6% to be paid.

---

[6] The issue of whether the CDA can apply to a non-FAR contract is not before us and we express no opinion on the issue.

2. It is the determination of the Contracting Officer that this contract be terminated for convenience and that no additional funds be paid to the contractor.

(R4, tab 34 at 1)

7. On 29 March 2011 the government issued contract Modification No. P00002 which terminated the contract for convenience, stating that the work completed was accepted "as is" and that money paid to LSCC as of that date was considered payment in full for the work completed (R4, tabs 34, 38, 47).

8. From 3 April 2011 through 6 June 2013 LSCC continued to seek payment of an additional 26.6% of the contract price for contract work allegedly completed prior to the termination for which it had not yet been paid (R4, tabs 39-45).

9. On 13 June 2013 CO Wysoske responded to LSCC's requests for assistance in getting further payment under the terminated contract (R4, tabs 43-46) by issuing a final decision denying LSCC's 26 February 2011 termination for convenience settlement proposal:

> 6.It was the original Contracting Officer's decision that this contract be terminated for convenience of the Government, with the following items:
>
> a.The work completed be accepted as is.
>
> b.The monies already paid be considered payment in full for the work completed.
>
> c.No other money shall be paid to the contractor on this project.
>
> d.Contract shall be modified to reflect items listed above.
>
> 7.As the current contracting officer, I see no evidence or supporting documentation that would cause me to overturn his original decision. This decision resulted in modification P[0]0002, signed by the contracting officer on 29 March 2011. This is the final decision of the original Contracting Officer. And this is the final decision of the current contract[ing] officer. You may appeal this decision to the agency board of contract appeals. If you

7

decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the agency board of contract appeals and provide a copy to the Contracting Officer from whose decision this appeal is taken.

(R4, tab 47 at 1-4)

10. On 8 September 2013 LSCC requested CO Wysoske's assistance in submitting an appeal of her final decision. CO Wysoske provided LSCC with the email address of this Board and further advised LSCC that "[i]f your claim is over $100,000 it will need to be certified." (R4, tab 48)

11. LSCC's appeal from CO Wysoske's final decision was received by the Board on 11 September 2013 (R4, tab 49). LSCC's notice of appeal identified three claimed items:

1. Final 26.6% payment which is USD 302,037.

2. I would also like to claim USD 489,459 for [i]ncrement [i]n the project total due to the changes in the design imposed on us post contract. This [i]ncluded change in the slop[e] of the road.... As can be seen from the attached email Rob Lutgens promised in his email that he will increase the total price due to these changes. Unfortunately, despite my regular follow up I never received this increase in the project total.

3. I would also like to claim USD 96,000 for the lose [sic] due to the Act of God.... I have attached a copy of my original request for this lost [sic] and my reasoning for it.

The total I am claiming is 302037+489459+96000 = 887496 US Dollars.

(*Id.* at 7) LSCC's notice of appeal package contained various documents, including a "Contract Certification" dated 9 September 2013 (*id.* at 8).

12. On 24 October 2014 the government filed its amended motion to dismiss for lack of jurisdiction (AMD). The parties have fully briefed the issues raised in the AMD.

8

DECISION

The government's AMD argues that the appeal suffers from three jurisdictional defects: (1) the CERP contract at issue is not a procurement contract under the CDA, has no contract provisions requiring decision by the Board, the Secretary of Defense or Secretary of a Military Department nor any directives which grant LSCC a right of appeal to the Board; (2) LSCC failed to submit a CDA certified claim to a contracting officer; and, (3) LSCC's notice of appeal presents three claims, two of which were never submitted to a contracting officer for a final decision as required by the CDA.

This Board's jurisdiction typically arises under the CDA which applies to any express or implied procurement contract made by an executive agency of the United States Government. 41 U.S.C. §§ 7102(a). A federal government procurement contract is one under which an executive agency acquires "property or services for the direct benefit or use of the United States Government." 31 U.S.C. § 6303(1); *Wesleyan Co. v. Harvey*, 454 F.3d 1375, 1378 (Fed. Cir. 2006) (The Board has subject matter jurisdiction over express or implied contracts entered into by an executive agency for the procurement of property for the direct benefit or use of the Federal Government) (citing *New Era Constr. v. United States*, 890 F.2d 1152, 1157 (Fed. Cir. 1989)); *Delta Steamship Lines, Inc. v. United States*, 3 Cl. Ct. 559, 569 (1983) ("[I]t is concluded from a reading of the Contract Disputes Act and its legislative history that...the conventional contract for the direct procurement of property, services and construction, to be used directly by the Government...is the type of Government contract covered by the Act."). An agreement by the United States Government to purchase property or services for the direct benefit of a party other than the United States Government is not a procurement contract, but either a grant or a cooperative agreement. 31 U.S.C. §§ 6301, 6303. The FAR is not applicable to grants or cooperative agreements (FAR 2.101, *Contract*) and is expressly not applicable to CERP contracts (SOF ¶ 4). CERP contracts are express agreements with indigenous contractors[7] to provide property or services for the benefit and use of the people of Iraq or Afghanistan and CERP funds are expressly prohibited to be used for the direct or indirect benefit or use of the United States Government, its military or the militaries of Iraq and Afghanistan (SOF ¶¶ 3, 4). The CDA is therefore not applicable to a CERP contract and we have no jurisdiction under the CDA to consider LSCC's appeal. As there is no CDA jurisdiction, we need not address the government's arguments regarding the lack of proper CDA claims submitted to a contracting officer for decision.

The lack of CDA jurisdiction, however, is not the end of the analysis as our charter provides for other potential sources of jurisdiction:

---

[7] "[O]ne of the purposes of CERP is to employ Iraq and Afghanistan residents in local humanitarian and reconstruction projects" (NDAA FY06 at 799).

(b) [P]ursuant to the provisions of contracts requiring the decision by the Secretary of Defense or by a Secretary of a Military Department or their duly authorized representative, or (c) pursuant to the provisions of any directive whereby the Secretary of Defense or the Secretary of a Military Department or their authorized representative has granted a right of appeal not contained in the contract on any matter consistent with the contract appeals procedure.

48 C.F.R., chapter 2, appx. A, part 1 (14 May 2007).

We find no contract provisions, nor have the parties directed us to any, which would meet the requirements of our charter and provide us with jurisdiction over any contract disputes between LSCC and the government under the CERP contract at issue and the JCC-I/A Acquisition Instruction prohibits the incorporation of any clauses or other terms by reference (SOF ¶ 4(f)). Likewise, neither party has directed us to any directive, as defined in our charter, which provides for our jurisdiction over contract disputes between them.

It is undisputed that CO Wysoske provided LSCC with information regarding an appeal to this Board (SOF ¶¶ 9, 10), however, by doing so she did not create jurisdiction where none otherwise exists. The CDA is a statute waiving sovereign immunity and must be strictly construed. *Winter v. FloorPro, Inc.*, 570 F.3d 1367, 1370 (Fed. Cir. 2009). "[O]nly Congress can grant waivers of sovereign immunity," *Pacrim Pizza Co. v. Pirie*, 304 F.3d 1291, 1294 (Fed. Cir. 2002), and there is no evidence in the contract or otherwise that Congress granted such a waiver of sovereign immunity with respect to CERP contracts.

## CONCLUSION

We are without jurisdiction to consider the present appeal. The government's amended motion to dismiss for lack of jurisdiction is granted.

Dated: 24 March 2015

DIANA S. DICKINSON
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

10

I concur                                    I concur


MARK N. STEMPLER                            RICHARD SHACKLEFORD
Administrative Judge                        Administrative Judge
Acting Chairman                             Vice Chairman
Armed Services Board                        Armed Services Board
of Contract Appeals                         of Contract Appeals


I certify that the foregoing is a true copy of the Opinion and Decision of the
Armed Services Board of Contract Appeals in ASBCA No. 58872, Appeal of Latifi
Shagiwall Construction Company, rendered in conformance with the Board's Charter.

Dated:


                                JEFFREY D. GARDIN
                                Recorder, Armed Services
                                Board of Contract Appeals

11