SODEXHO MARRIOTT MANAGEMENT, INC., f/k/a Marriott Management Services,

v.

The UNITED STATES.

No. 99–765C.

United States Court of Federal Claims.

July 2, 2004.

James P. Gerard, Savannah, Georgia, for the plaintiff.

Richard P. Schroeder, Washington, D.C. with whom was Assistant Attorney General Peter D. Keisler, for the defendant. John R. Cohn, Of Counsel.

## OPINION

YOCK, Senior Judge.

Sodexho Marriott Management, Inc., f/k/a Marriott Management Services ("Marriott"), filed suit against the United States claiming entitlement to reimbursement for expenditures totaling $127,576.15. Marriott alleges that it is owed this money under a food service contract it entered into on December 1, 1991, with the Morale, Welfare and Recreation ("MWR") 0160, Marine Corps Recruit Depot/Eastern Recruiting Region, Parris Island, South Carolina ("Parris Island MWR"). Specifically, Marriott asserts that it is entitled to reimbursement for costs incurred for the installation of fixtures in the building in which the relevant food services operation was located.

On September 14, 1999, Marriott filed its two-count Complaint alleging that it is legally entitled to this money either under its express contract with the Parris Island MWR (Count I: Breach of Contract) or, in the alternative, as compensation for a taking (Count II: Taking Without Just Compensation). Both counts seek monetary damages, prejudgment interest, reasonable attorney fees, and costs. The Complaint asserts that this Court has jurisdiction over those claims under the Contract Disputes Act ("CDA") and the Tucker Act. On March 31, 2000, the defendant filed Defendant's Partial Motion to Dismiss and Motion for Summary Judgement. On February 21, 2001, after full briefing and oral argument, this Court granted the defendant's motion to the extent that it dismissed the plaintiff's Fifth Amendment takings claim. *Sodexho Marriott Mgmt., Inc., f/k/a Marriott Mgmt. Servs.,* No. 99–765C (Fed.Cl. Feb.21, 2001). This Court found that the takings claim was "merely a recharacterization of the breach of contract claim" and determined that the plaintiff's remedy lies, if at all, in contract and not the Fifth Amendment. *Id.* at 20–22.

On September 23, 2002, the United States Court of Appeals for the Federal Circuit decided *Pacrim Pizza Co. v. Pirie,* 304 F.3d 1291 (Fed.Cir.2002), which addressed the issue of whether or not the CDA applies to contracts entered into with an MWR program or activity.

On October 2, 2003, the defendant filed Defendant's Motion to Dismiss Plaintiff's Surviving Claim. The plaintiff responded on December 17, 2003, with Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss and accompanying Motion to Transfer. On January 14, 2004, Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss was filed.

On February 25, 2004, the plaintiff filed Plaintiff's Motion to Reinstate Claim. In that motion, the plaintiff requests, on equitable grounds, that its previously dismissed Fifth Amendment takings claim be reinstated if this Court finds it lacks jurisdiction over the plaintiff's remaining breach of contract claim. On March 24, 2004, the defendant filed Defendant's Response to Plaintiff's Motion to Reinstate Claim in opposition arguing that there is no basis for reinstating the plaintiff's takings claim.

On May 5, 2004, the plaintiff filed, by leave of this Court, its Supplemental Brief in Response to Government's Motion to Dismiss. The plaintiff asserts that the Federal Circuit erred in *Pacrim Pizza* in finding that an MWR holds immunity from suit under the

nonappropriated funds doctrine and in holding that the CDA is inapplicable to contract disputes against MWR activities and programs like the Parris Island MWR. On June 3, 2004, the defendant filed Defendant's Sur-Reply to Plaintiff's Supplemental Brief and Supplemental Appendix in reply to the plaintiff's arguments and in further support of its pending motion to dismiss.

All of these motions have been fully briefed, and the Court finds oral argument is unnecessary.

For the reasons set forth herein, this Court grants Defendant's Motion to Dismiss Plaintiff's Surviving Claim and denies both Plaintiff's Motion to Transfer and Plaintiff's Motion to Reinstate Claim. Specifically, the Court holds that dismissal is required because the nonappropriated funds doctrine bars it from having jurisdiction over the plaintiff's claim whether asserted as a breach of contract or a taking. This is, in part, based upon this Court's findings that the *Pacrim Pizza* decision is controlling and must be applied retroactively. Further, this Court declines to transfer the action to the District Court of South Carolina because it finds that a transfer would not be in the interest of justice.

*Factual Background* [1]

The facts are uncontested and are drawn from the Complaint, Defendant's Motion to Dismiss Plaintiff's Surviving Claim, Plaintiff's Brief in Opposition, Defendant's Reply, the plaintiff's Supplemental Brief in Response to Government's Motion to Dismiss, Defendant's Sur-Reply to Plaintiff's Supplemental Brief and Supplemental Appendix, and the appendices attached thereto.

On December 1, 1991, the Parris Island MWR entered into a food service contract (the "Contract") with Marriott. The Contract was for the provision of a food service operation at the Marine Corps Recruit Depot at Parris Island, South Carolina. The Contract informed Marriott that the Parris Island MWR was a nonappropriated fund instrumentality ("NAFI").

The Contract was terminated in 1996 through a bilateral modification, Modification No. 2. On July 22, 1998, Marriott submitted a certified claim for $127,576.15 to the contracting officer and requested a final decision. On September 18, 1998, the contracting officer issued a final decision denying Marriott's claim. On September 14, 1999, the plaintiff filed its Complaint in the United States Court of Federal Claims. Marriott complains that the Parris Island MWR breached the Contract or committed an unconstitutional taking by refusing to reimburse Marriott for $127,576.15 expended for the installation of fixtures in the building where the food court was located.

Subsequent to this action being filed in this Court, the Federal Circuit's decision in *Pacrim Pizza* addressed, as a matter of first impression, the issue of whether or not the CDA applies to contracts entered into with an MWR program or activity. Under the facts of *Pacrim Pizza*, a Marine Corps MWR had awarded a food services contract to plaintiff Pacrim Pizza Company to provide fast food services at the Marine Corps Air Station in Iwakuni, Japan. After the contracting officer terminated the contract for default, the company appealed the decision to the Armed Services Board of Contract Appeals ("ASBCA"). The ASBCA sustained the termination, and the company appealed to the Federal Circuit asserting that court had jurisdiction under both the enumerated exchanges inclusion under sections 1346 and 1491 of Title 28 and a clause in the relevant contract declaring that the Federal Circuit had jurisdiction over related contract disputes under the CDA. The Federal Circuit acknowledged that it had jurisdiction over appeals from agency boards of contract appeals when the CDA applied, but also noted that the CDA limits the court's jurisdiction to covered NAFI contracts of the armed forces exchanges. As the Federal Circuit stated, "[a] NAFI may be a covered contracting entity under the Contract Disputes Act if it is closely affiliated with a post exchange and meets a three-part test." *Pacrim Pizza*, 304 F.3d at 1293. The court found that the

---

1. Many of the facts underlying this dispute were set forth in this Court's prior Opinion and are not repeated here. *See Sodexho Marriott*, No. 99–765C (Fed.Cl. Feb.21, 2001). That factual recitation is incorporated by reference, and only the salient facts are presented below.

contract with the MWR, as a NAFI, failed to meet the "threshold requirement that the NAFI be closely affiliated with a post exchange." *Id.* It held that a contract with a local MWR entity with supervision and contracting structures separate and distinct from an exchange is not a covered activity and concluded that the enumerated exchange exceptions excluded the MWR entity. *Id.* at 1292–94. Therefore, the Federal Circuit held that the nonappropriated funds doctrine deprived it of jurisdiction. *Id.* Further, the court also held that the contract's declaration of jurisdiction was not controlling, noting that "only Congress can grant waivers of sovereign immunity; parties may not by contract bestow jurisdiction on a court." *Id.* at 1294.

### Discussion

### I. Defendant's Motion to Dismiss

#### A. Standard of Review

When ruling on a motion to dismiss for lack of subject matter jurisdiction under RCFC 12(b)(1), the court "must accept as true the facts alleged in the complaint, and must construe such facts in the light most favorable to the pleader." *AINS, Inc. v. United States*, 56 Fed.Cl. 522, 527 (2003) (citing *Henke v. United States*, 60 F.3d 795, 797 (Fed.Cir.1995)), *aff'd* 365 F.3d 1333 (Fed. Cir.2004); *see Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). When a federal court hears such a jurisdictional challenge, "its task is necessarily a limited one." *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683. In the context of issues arising "under the non-appropriated funds doctrine, the Court of Federal Claims must exercise jurisdiction absent a 'clear expression by Congress that it intended to separate the agency from general federal revenues.'" *Core Concepts of Florida, Inc. v. United States*, 327 F.3d 1331, 1334 (Fed.Cir.2003) (quoting *Furash & Co. v. United States*, 252 F.3d 1336, 1339 (Fed.Cir.2001), *cert. denied*, —— U.S. ——, 124 S.Ct. 805, 157 L.Ed.2d 693 (2003)). But "the burden of establishing the court's subject matter jurisdiction rests with the party seeking to invoke it." *AINS*, 56 Fed.Cl. at 526–27; *accord Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed.Cir.1998). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683. When resolving a jurisdictional challenge, the court may consider all relevant evidence, including evidentiary matters outside the pleadings. *Indium Corp. of America v. Semi–Alloys, Inc.*, 781 F.2d 879, 884 (Fed. Cir.1985).

#### B. Jurisdiction With Respect to Nonappropriated Fund Instrumentalities

##### 1. General jurisdiction and limitations

 This case involves a progeny of the doctrine of sovereign immunity-the nonappropriated fund instrumentality or "NAFI." NAFI's are Federal Government entities whose "monies do not come from congressional appropriation but rather primarily from [their] own activities, services, and product sales." *Cosme Nieves v. Deshler*, 786 F.2d 445, 446 (1st Cir.1986); *see United States v. Hopkins*, 427 U.S. 123, 125 n. 2, 96 S.Ct. 2508, 49 L.Ed.2d 361 (1976); *see also AINS*, 56 Fed.Cl. at 527–37 (providing an overview of the origins and development of NAFI's and related legal standards). Indeed, "the most important attribute of a NAFI * * * is that absent a statutory amendment, there is no situation in which appropriated funds could be used to fund the federal entity." *AINS*, 56 Fed.Cl. at 533 (citing *Furash*, 252 F.3d at 1340). Because the Court of Federal Claims can only award judgments from appropriated funds, 28 U.S.C. § 2517, NAFI's generally cannot be sued in this court. *See AINS*, 56 Fed.Cl. at 524 (citing *Hopkins*, 427 U.S. at 124, 96 S.Ct. 2508 (quoting *Standard Oil Co. v. Johnson*, 316 U.S. 481, 62 S.Ct. 1168, 86 L.Ed. 1611 (1942))).

The CDA, however, applies to "any express or implied contract (including those of the nonappropriated fund activities described in sections 1346 and 1491 of title 28) entered into by an executive agency * * *." 41 U.S.C. § 602(a) (2000). In turn, sections 1346 and 1491 establish jurisdiction to entertain claims arising from express or implied contracts with certain enumerated NAFI's,

i.e., "the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration * * *." 28 U.S.C. §§ 1346(a)(2), 1491(a)(1) (2000). Contracts with NAFI's outside these enumerated exchanges generally are not covered by the CDA, although there is a narrow exception under which "[a] NAFI may be a covered contracting entity under the Contract Disputes Act if it is closely affiliated with a post exchange and meets a three-part test * * *." *Pacrim Pizza,* 304 F.3d at 1293 (citing *McDonald's Corp. v. United States,* 926 F.2d 1126, 1132–33 (Fed.Cir.1991)).

## 2. The parties' arguments

Relying upon the Federal Circuit's decision in *Pacrim Pizza,* the defendant in the instant action seeks to have the plaintiff's Complaint dismissed under RCFC 12(b)(1) for lack of subject matter jurisdiction. Specifically, the defendant asserts, "[b]ecause the United States Court of Appeals for the Federal Circuit has expressly held that the Contract Disputes Act does not apply to contracts with MWR, a nonappropriated fund instrumentality, this Court does not possess jurisdiction to entertain this action." Def.'s Mot. at 3 (citing *Pacrim Pizza,* 304 F.3d at 1293). It further argues that provisions within the Contract cannot create or grant subject matter jurisdiction upon this Court.

In its initial response, the plaintiff acknowledges the jurisdictional holding of *Pacrim Pizza* but argues that this Court should assert jurisdiction to hear its claim because that decision should not be applied retroactively. Citing such authority as *McDonald's,* 926 F.2d at 1126 and *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the plaintiff contends that based upon the three-part test set forth in *Chevron Oil* the alleged "new rule of law" announced in *Pacrim Pizza* should not be applied retroactively to the case *sub judice.* In the alternative, Marriott requests that should this Court determine that it lacks jurisdiction over the surviving breach of contract claim, then it should, in lieu of dismissal, transfer the matter to the United States District Court for the District of South Carolina under 28 U.S.C. § 1631.

In reply, the defendant states that Marriott is incorrect in asserting that *Pacrim Pizza* should not be applied retroactively. Specifically, citing *Harper v. Virginia Dept. of Taxation,* 509 U.S. 86, 97, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993) and *Budinich v. Becton Dickinson & Co.,* 486 U.S. 196, 203, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988), the defendant avers that the *Chevron Oil* standard for retroactivity in civil cases was overruled and replaced with a strict rule-one which requires that the *Pacrim Pizza* ruling be applied retroactively. The defendant also challenges Marriott's retroactivity analysis by asserting that Marriott's interpretation of and reliance upon an allegedly long-standing rule of law established by *McDonald's* is faulty. Finally, the defendant argues that Marriott's request that the case be transferred should be denied because Marriott has made no showing that the district court possesses jurisdiction to entertain the breach of contract claim.

Subsequently, the plaintiff filed a motion requesting that its previously dismissed Fifth Amendment takings claim be reinstated if this Court finds it lacks jurisdiction over the plaintiff's remaining breach of contract claim. The plaintiff argues that it "would be left without any adequate remedy under the law to pursue its claims" if the breach of contract claim is dismissed and the takings claim is not reinstated. On March 24, 2004, the defendant filed Defendant's Response to Plaintiff's Motion to Reinstate Claim in opposition. The defendant argues that there is no basis for reinstating the plaintiff's takings claim because this Court would not have jurisdiction to entertain that claim even if it were reinstated. The defendant also argues that the plaintiff's claim is substantively based in contract, and thus, a takings claim may not be properly asserted as an independent basis for recovery and was properly dismissed previously as a recharacterization of the breach of contract claim.

On May 5, 2004, in yet another attempt to stave off complete dismissal of this case, the plaintiff filed, by leave of this Court, its Supplemental Brief in Response to Government's Motion to Dismiss. In that brief, the

plaintiff asserts that the Federal Circuit's finding in *Pacrim Pizza* that the CDA is inapplicable to contract disputes against MWR was erroneous because that court did not have before it an adequate factual record showing the nature of the funding of MWR and U.S. Marine Corps Community Services ("MCCS").[2] The plaintiff argues that this Court has jurisdiction over the pending matter under the CDA because MCCS allegedly receives "substantial amounts of appropriated funds on an annual basis," which are "made available even for Category C activities which includes food service contracts such as the contract which is the subject of the instant litigation." Pl.'s Supp. Br. at 2; *see also id.* at 6–7. On June 3, 2004, the defendant filed Defendant's Sur–Reply to Plaintiff's Supplemental Brief and Supplemental Appendix in reply to the plaintiff's arguments with respect to MCCS funding and in further support of the pending motion to dismiss. The defendant argues that receipt of limited appropriated fund support by MCCS and MWR's does not destroy the NAFI status of the MWR activities at issue in *Pacrim Pizza* and in the instant case. Therefore, it concludes that the nonappropriated funds doctrine bars this Court from exercising jurisdiction over the plaintiff's claim.

The primary contention of the defendant's motion to dismiss the breach of contract claim is that because neither the CDA nor the Tucker Act apply to contracts with an MWR, this Court, under the nonappropriated funds doctrine, lacks subject matter jurisdiction over Marriott's claim arising from the Contract. The defendant asserts that the Federal Circuit "expressly held that Morale, Welfare, and Recreation, the very instrumentality at issue in this case, 'is not a covered entity.'" Def.'s Mot. at 5 (citing *Pacrim Pizza,* 304 F.3d at 1293). The defendant avers that the Contract was issued "by a United States Marine Corps ('Marine Corps') nonappropriated fund instrumentality that is distinct from the Marine Corps and Navy exchange systems," *id.* at 4, and "by the same type of local MWR office that the

Court of Appeals for the Federal Circuit has expressly held is not subject to the CDA," *id.* at 5 (citing *Pacrim Pizza,* 304 F.3d at 1293).

In support of its argument, the defendant offers the affidavit of Mary L. Hostetter, Acting Deputy Director for Support, Personal and Family Readiness Division, Headquarters, U.S. Marine Corps. Def.'s Mot.App. 36–38 ("Hostetter Aff."). Ms. Hostetter swears that Morale, Welfare and Recreation programs within the U.S. Marine Corps fall under supervisory and operational control separate from that of the Marine Corps Exchanges. Hostetter Aff. ¶¶ 1–2. She also swears that:

> Individual Marine Corps bases located worldwide have MCCS (formerly referred to as MWR) offices which provide essential quality of life services for Marine Corps personnel, eligible civilian employees, and family members. These offices have their own contracting capability and execute contracts in support of base-level Morale, Welfare, and Recreation (MWR) programs. This contracting function is distinct from that of the Marine Corps Exchanges.

Hostetter Aff. ¶ 3.

The plaintiff does not challenge the defendant's description of the MWR as having supervision and contracting structures separate and distinct from an exchange. Further, MWR entities are NAFI's not specifically listed in sections 1346(a)(2) and 1491(a)(1). *See Pacrim Pizza,* 304 F.3d at 1293. Therefore, the next question is whether the Court may exercise jurisdiction under the application of a narrow exception.

As previously noted, the Federal Circuit in *Pacrim Pizza* considered the issue, as a matter of first impression, whether contracts with MWR entities fall within the enumerated exceptions for exchanges. It concluded that a contract with an MWR entity with "supervision and contracting structures separate and distinct from an exchange" does not fall within the enumerated exceptions for exchanges; and, thus, it is not subject to the CDA. *Id.* The Federal Circuit's analysis is

---

2. MCCS is an organization that supervises the Marine Corps Exchanges, non-exchange Morale, Welfare and Recreation ("MWR") activities, and activities that are not nonappropriated fund activities.

applicable to the Tucker Act as well because "the non-appropriated funds doctrine applies to the CDA in the same way that it applies to the Tucker Act." *Core Concepts*, 327 F.3d at 1338. Thus, with respect to NAFI's, lack of jurisdiction under the CDA amounts to lack of jurisdiction under the Tucker Act. *Id.* Accordingly, under the holding of *Pacrim Pizza*, this Court does not have jurisdiction to hear an action grounded upon a contract with an MWR that is not established to be closely affiliated with a post exchange, such as the Contract between Marriott and the Parris Island MWR. *See, e.g., Pacrim Pizza*, 304 F.3d at 1293. Indeed, the plaintiff apparently concedes that if this Court applies the holding of *Pacrim Pizza* to the instant case, it must find that it lacks subject matter jurisdiction over the surviving breach of contract claim. Despite these concessions, Marriott asserts that this Court still has a legal basis for asserting jurisdiction over this dispute.

### 3. Correctness of *Pacrim Pizza*.

The plaintiff asserts that, notwithstanding *Pacrim Pizza*, this Court has, and should exercise, jurisdiction over the pending matter under the CDA. This assertion rests upon the plaintiff's argument that the Federal Circuit's decision in *Pacrim Pizza* that the CDA is inapplicable to contract disputes against MWR was erroneous. The plaintiff contends that the Federal Circuit did not have before it an adequate factual record showing the nature of the funding of MWR and MCCS. Marriott alleges that MCCS receives "substantial amounts of appropriated funding on an annual basis" that are "made available even for Category C activities which includes food service contracts such as the contract which is the subject of the instant litigation." Pl.'s Supp. Br. at 2; *see also id.* at 4–7. Based upon this argument, its analysis of selected NAFI and nonappropriated funds doctrine cases, and a brief discussion of MCCS funding, the plaintiff concludes that "MCCS should not qualify for NAFI immunity. [And a]ccordingly, this Court should hold that the CDA should apply to the instant action and that it has jurisdiction over same." Pl.'s Supp. Br. at 7. In the alternative, it states that "[a]t the very least, this Court should retain jurisdiction of this matter and reserve ruling on the Government's motion until trial at which time Plaintiff will have a more developed record on this issue." *Id.*

In reply, the defendant concedes that MCCS receives appropriated funds and that MWR programs and activities, including "Category C" MWR revenue-generating activities, may receive appropriated funds, but it argues that this limited funding support does not destroy the NAFI status of the MWR activities at issue both in *Pacrim Pizza* and in the instant case. The defendant concludes, therefore, that the nonappropriated funds doctrine bars this Court from exercising jurisdiction over the plaintiff's claim. It notes that this is consistent with *Pacrim Pizza*, which is "indistinguishable in all material respects from this case," Def.'s Sur–Reply at 4, and also is consistent with cases interpreting the nonappropriated funds doctrine.

This Court is bound by the Federal Circuit's decision and the plaintiff has not convinced this Court that the plaintiff's claims are distinguishable from those in *Pacrim Pizza*. Indeed, the plaintiff concedes that case "directly dealt with a claim against the Marine Corps MWR" and that "[t]he contractor in *Pacrim Pizza* likewise entered [into] a contract in which the government affirmatively stated that the contract was subject to the Contract Dispute Act." Pl.'s Supp. Br. at 2. Therefore, this Court declines the plaintiff's invitation to review and overturn the Federal Circuit's decision in *Pacrim Pizza*. The next question is whether that decision should be applied retroactively to this case.

### 4. Retroactive application of *Pacrim Pizza*

█ The plaintiff argues that "[t]his Court has jurisdiction to hear this case because the *Pacrim Pizza* decision should not be applied retroactively." Pl.'s Br. at 2. The plaintiff acknowledges the relevant statutory jurisdictional limitations placed upon the Court of Federal Claims with respect to NAFI's, but then asserts that judicial rulings have carved

**236**

out exceptions to those statutory limits and have established "binding legal precedent in holding that unenumerated NAFIs are subject to the Contract Disputes Act" and concludes that "[t]he Court of Appeals for the Federal Circuit, in its decision in *Pacrim Pizza,* reversed this long-followed rule of allowing this Court to assume jurisdiction over unenumerated NAFIs such as MWRs." Pl.'s Br. at 3 (citing *McDonald's,* 926 F.2d at 1126). From this position, the plaintiff moves into the main substance of its opposition argument, which is that, based upon the three-part test set forth in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the alleged new rule of law announced in *Pacrim Pizza* should not be applied retroactively. The plaintiff proceeds to argue that all three prongs of the *Chevron Oil* balancing test are satisfied.[3]

The defendant replies with challenges to the plaintiff's arguments. The defendant asserts that *Chevron Oil* is no longer the governing standard for retroactivity in civil cases and concludes that the decision in *Pacrim Pizza* must be applied retroactively. Def.'s Reply at 4 (citing *In re Federated Dept. Stores, Inc.,* 44 F.3d 1310, 1317 (6th Cir.1995)). According to the defendant, the Supreme Court, in *Harper v. Virginia Department of Taxation,* 509 U.S. 86, 97, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993), "overruled *Chevron [Oil]* and adopted a strict rule that requires the retroactive application of a new Supreme Court decision to all civil cases still open to direct review, and to all events, regardless of whether the events predate or postdate the Supreme Court's announcement of the rule." Def.'s Reply at 4.

This Court agrees with the defendant's conclusion that the Federal Circuit's decision in *Pacrim Pizza* must be applied retroactively to the case *sub judice,* albeit based upon a more thorough analysis of the law.

In *James B. Beam Distilling Co. v. Georgia,* 501 U.S. 529, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), although the Court failed to produce a unified opinion, a majority

agreed that a rule of federal law, once announced and applied to the parties to the controversy, must be given full retroactive effect to all others not barred by *res judicata* or statutes of limitation and that the theory of selective prospectivity must be abandoned in civil cases. In *Harper v. Virginia Department of Taxation,* 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993), the majority opinion expressly adopted a rule that "fairly reflects the position of a majority of Justices in *Beam* ":

> When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule. This rule extends *[Griffith]* Griffith's *[v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987)] ban against "selective application of new rules." Mindful of the "basic norms of constitutional adjudication" that animated our view of retroactivity in the criminal context, we now prohibit the erection of selective temporal barriers to the application of federal law in noncriminal cases. In both civil and criminal cases, we can scarcely permit "the substantive law [to] shift and spring" according to the "particular equities of [individual parties'] claims" of actual reliance on an old rule and of harm from a retroactive application of the new rule. Our approach to retroactivity heeds the admonition that "[t]he Court has no more constitutional authority in civil cases than in criminal cases to disregard current law or to treat similarly situated litigants differently."

*Id.* at 97, 113 S.Ct. 2510 (internal citations omitted). The Supreme Court in *Reynoldsville Casket Co. v. Hyde,* 514 U.S. 749, 115 S.Ct. 1745, 131 L.Ed.2d 820 (1995), accepted the defendant's acknowledgment that *Harper:*

> "retrospective operation will further or retard" the operation of the legal principle at issue; and (3) whether making the rule retroactive would be inequitable. *Chevron Oil,* 404 U.S. at 106–07, 92 S.Ct. 349.

---

**3.** The three prongs are: (1) whether the decision announces a new principle of law, either by overruling clear precedent or by deciding an issue of first impression the resolution of which was "not clearly foreshadowed"; (2) whether

held that, when (1) the Court decides a case and applies the (new) legal rule of that case to the parties before it, then (2) it and other courts must treat that same (new) legal rule as "retroactive," applying it, for example, to all pending cases, whether or not those cases involve predecision events.

*Hyde*, 514 U.S. at 752, 115 S.Ct. 1745.

Although *Beam* and *Harper* dealt with decisions issued by the Supreme Court, various federal courts of appeals have applied this approach to retroactivity with respect to their own decisions. *See, e.g., Olcott v. Delaware Flood Co.*, 76 F.3d 1538, 1547–48 (10th Cir.1996) (finding "cases decided under *Chevron* are inapposite" and that *"Beam* requires the retroactive application of [a dispositive Third Circuit case] in this case [in which Third Circuit law is controlling] because the Third Circuit has applied its new rule retroactively on four occasions."); *In re Federated Dept. Stores*, 44 F.3d at 1317–18 (finding *Harper* dictated retroactive application of two prior Sixth Circuit decisions); *Eckstein v. Balcor Film Investors*, 8 F.3d 1121, 1128 (7th Cir.1993) (noting that if not for state law to the contrary, a previous Seventh Circuit decision would apply retroactively based on *Harper* ); *see also Laborers' Int'l Union of N. Am., AFL–CIO v. Foster Wheeler Corp.*, 26 F.3d 375, 386 n. 8 (3d Cir.1994) ("Although both [*Harper* and *Beam* ] dealt with decisions issued by the Supreme Court, given the *ratio decidendi* of both cases, we suspect that other courts are probably correct that there is no cogent basis for distinguishing decisions handed down by the inferior federal courts."). Importantly, the Federal Circuit previously has adopted this approach to retroactivity by applying a previous decision retroactively in the wake of *Harper*. *See Newport News Shipbuilding & Dry Dock Co. v. Garrett*, 6 F.3d 1547, 1554 (Fed.Cir.1993); *see also Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki*, 344 F.3d 1359, 1370 n. 4 (Fed.Cir.2003), *cert. denied,* —— U.S. ——, 124 S.Ct. 2018, 158 L.Ed.2d 492 (2004), and *cert. denied,* —— U.S. ——, 124 S.Ct. 2019, 158 L.Ed.2d 492 (2004) ("Consistent with Supreme Court precedent, the holdings of that Court *and our own* regarding the *Festo* presumption of surrender and its rebuttal apply to all granted patents and to all pending litigation that has not been concluded with a final judgment, including appeals." (citing *Harper*, 509 U.S. at 97, 113 S.Ct. 2510) (emphasis added)). This Court is, of course, bound by the decisions of the Federal Circuit and the United States Supreme Court.

Even if, as the plaintiff claims, the Federal Circuit announced a new principle of law in *Pacrim Pizza*, the holding in *Pacrim Pizza* "must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the] announcement of the rule" because that court applied that rule of law to the parties in that case. *See Harper*, 509 U.S. at 97, 113 S.Ct. 2510. When a court has "applied a rule of law to the litigants in one case it must do so with respect to all others not barred by procedural requirements or res judicata." *Beam*, 501 U.S. at 544, 111 S.Ct. 2439. This fact alone brings this Court's inquiry to an end and defeats Marriott's retroactivity argument. *Beam*, 501 U.S. at 540, 111 S.Ct. 2439, ("[T]he question is whether it is error to refuse to apply a rule of federal law retroactively after the case announcing the rule has already done so. We hold that it is, principles of equality and *stare decisis* here prevailing over any claim based on a *Chevron Oil* analysis."). This Court must apply the *Pacrim Pizza* jurisdictional holding in the case *sub judice* because it was applied to Pacrim Pizza itself. Considerations of the purpose of the *Pacrim Pizza* holding and equities are immaterial. *See Beam*, 501 U.S. at 543–44, 111 S.Ct. 2439.

Yet another reason for this Court's rejection of Marriott's argument that the Federal Circuit's jurisdictional ruling in *Pacrim Pizza* should not be applied retroactively is provided by the Supreme Court. In *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 379, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981), the Supreme Court held: "A court lacks discretion to consider the merits of a case over which it is without jurisdiction, and thus, by definition, a jurisdictional ruling may never be made prospective only." Consequently, *Pacrim Pizza* must be given full retroactive effect.

Even if the *Chevron Oil* factors were applicable, this Court would still conclude that *Pacrim Pizza* should be applied retroactively. This Court believes that the plaintiff's interpretation of *McDonald's* as establishing "binding legal precedent" that "unenumerated NAFIs are subject to the Contract Disputes Act," Pl.'s Br. in Opp'n at 3, and of *Pacrim Pizza* as "revers[ing] this long-followed rule of allowing this Court to assume jurisdiction over unenumerated NAFIs such as MWRs," *id.*, is overly broad. *Pacrim Pizza* neither overrules past precedent nor decides an issue of first impression the resolution of which was not clearly foreshadowed. Although, as Marriott points out, the majority in *Pacrim Pizza* noted that " 'the question of whether contracts with Morale, Welfare and Recreation entities fall within the enumerated exceptions for exchanges is a matter of first impression,' " *id.* at 5 (quoting *Pacrim Pizza*, 304 F.3d at 1293), Pacrim *Pizza* falls in line with the logical progression of prior interpretations of sections 1346 and 1491. *See, e.g., Furash*, 252 F.3d at 1339; *McDonald's*, 926 F.2d at 1126.

Indeed, the *Pacrim Pizza* decision adopts no new rule to determine the courts' jurisdiction to entertain claims related to NAFI contracts under the CDA or the Tucker Act. The Federal Circuit expressly considered whether a contract with an MWR was within the limited exception for jurisdiction that was recognized in *McDonald's*, and thus within the enumerated exceptions for exchanges under sections 1346(a)(2) and 1491(a)(1). *Pacrim Pizza*, 304 F.3d at 1293. In its analysis, the Federal Circuit specifically noted that "*McDonald's* suggests that under [the three-part test], 'organization[s] serving the recreational needs of servicemen might not' 'be considered within the enumerated category.' " *Id.* (citing *McDonald's*, 926 F.2d at 1132). The Federal Circuit expressly found that the MWR contract did "not meet the *McDonald's* threshold requirement that the NAFI be closely affiliated with a post exchange." *Id.*

Further, the Federal Circuit in *Pacrim Pizza* merely interpreted and applied a statute that was enacted prior to the time that Marriott entered into the Contract and prior to the time that it filed this suit. Because *Pacrim Pizza* involved the interpretation of a statute enacted prior to the time the Contract was issued, it did not establish a new principle of law. *See Clark v. State Farm Mut. Auto. Ins. Co.*, 319 F.3d 1234, 1242 (10th Cir.2003) (applying the *Chevron Oil* factors, which the Colorado Supreme Court adopted as the retroactivity standards for civil cases, to determine whether or not to apply a relevant state decision retroactively). Thus, the first *Chevron Oil* factor would not be satisfied, and it would be proper to apply the interpretation of sections 1346(a)(2) and 1491(a)(1) contained in *Pacrim Pizza* retroactively. *See id.*

This Court also finds that retroactive application of *Pacrim Pizza* would not produce substantial inequities in the instant case. This Court is sympathetic to the plaintiff's argument that "[i]t would be particularly inequitable at this phase of litigation [after four years of costly litigation] to bar this claim by retroactive application of *Pacrim Pizza* and force [it] to seek relief elsewhere." Pl.'s Br. in Opp'n at 7. The plaintiff, however, was represented by counsel who was in a position to anticipate a jurisdictional challenge and to evaluate whether or not this Court could properly assert jurisdiction, under federal statutory and common law, to entertain its claims. Certainly, the plaintiff was on notice that the statutory limitation on the grant of the Court of Federal Claims' jurisdiction was controlling. Armed with that knowledge, Marriott selected its choice of forum and filed its claim with the Court of Federal Claims. Further, it elected to continue pursuing its claim in this Court despite its knowledge that an adverse jurisdictional ruling could be made at any stage of litigation. Although the plaintiff may have believed at the time of filing, and throughout the pursuit of this litigation, that this Court "held jurisdiction over this matter pursuant to the Contract Disputes Act," Pl.'s Br. in Opp'n at 5, and may now characterize the defendant's challenge of subject matter jurisdiction as late and manipulative, "challenges to subject matter jurisdiction are appropriate at any stage." *Fugere v. Derwinski*, 972 F.2d 331, 334 n. 5 (Fed.Cir.1992); *Newport News Shipbuilding & Dry Dock Co.*, 6 F.3d at 1553

("[A] party may challenge the subject matter jurisdiction of a federal tribunal at any time."); *Phillips v. General Servs. Admin.*, 924 F.2d 1577, 1579 (Fed.Cir.1991) ("A jurisdictional matter can be raised at any stage of a judicial proceeding by any party or by the court on its own motion."). Because the statutory language is clear and no new rule of law was adopted that either overruled clear past precedent or decided an issue of first impression the resolution of which was not clearly foreshadowed, there is no reason to believe that the plaintiff reasonably relied, to its detriment, on prior law. Thus, there is no substantial inequitable result in recognizing and enforcing the limitations on this Court's jurisdiction imposed by the relevant statutory provisions and the nonappropriated funds doctrine.

Indeed, this Court cannot, because of an actual or perceived inequity, create subject matter jurisdiction where Congress has forbidden its exercise. The Supreme Court has recognized this limitation:

Our agreement with the [court of appeals'] conclusion that it lacked jurisdiction, compels us to disapprove of its decision to reach the merits anyway "in the interest of justice." *[Christianson v. Colt Industries,]* 822 F.2d [1544] at 1559 [(Fed. Cir.1987)]. "Courts created by statute can have no jurisdiction but such as the statute confers." *Sheldon v. Sill,* 8 How. 441, 449[, 12 L.Ed. 1147] (1850). See also *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 379–380[, 101 S.Ct. 669, 66 L.Ed.2d 571] (1981). * * *

The age-old rule that a court may not in any case, even in the interest of justice, extend its jurisdiction where none exists has always worked injustice in particular cases. Parties often spend years litigating claims only to learn that their efforts and expense were wasted in a court that lacked jurisdiction * * *. Such situations inhere in the very nature of jurisdictional lines, for as our cases aptly illustrate, few juris-

dictional lines can be so finely drawn as to leave no room for disagreement on close cases. See, *e.g., K mart Corp. v. Cartier, Inc.,* 485 U.S. 176, 108 S.Ct. 950, 99 L.Ed.2d 151 (1988); *United States v. Hohri,* 482 U.S. 64, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987).

*Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 818, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988). The proposition that "a court may not in any case, even in the interest of justice, extend its jurisdiction where none exists" requires us to adhere to the Federal Circuit's jurisdictional interpretation of sections 1346(a)(2), 1491(a)(1) in *Pacrim Pizza.*[4] Jurisdiction means adjudicatory power. Equitable considerations are altogether irrelevant when a court lacks adjudicatory power. *Cf. Landgraf v. USI Film Prods.,* 511 U.S. 244, 274, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (pointing out that statutes repealing grants of jurisdiction apply to pending cases, notwithstanding reliance interests).

Marriott's argument, which is grounded in equity, that "both the parties and even the Court believed for four years that the Court of Federal Claims held jurisdiction over this matter pursuant to the Contract Disputes Act," Pl.'s Br. in Opp'n at 5, is irrelevant. *See Harper,* 509 U.S. at 97, 113 S.Ct. 2510 ("[W]e can scarcely permit 'the substantive law [to] shift and spring' according to 'the particular equities of [individual parties'] claims' of actual reliance on an old rule and of harm from a retroactive application of the new rule.") (quoting *Beam,* 501 U.S. at 543, 111 S.Ct. 2439).

Marriott's related argument that "[b]oth parties entered into this contract believing that the Contract Disputes Act would control any disputes surrounding the [C]ontract," Pl.'s Br. in. Opp'n at 7, is also to no avail. This belief was grounded most likely upon the Contract's express terms, specifically

4. Marriott's assertion that "[n]ot allowing the MWR activity to be included as an exception to the enumerated exchanges in the instant case would effectively further delay its right to appellate review" of the contracting officer's decision, Pl.'s Br. in Opp'n at 6, is off the mark. This

Court clearly may not allow the MWR activity to be included within the enumerated exchanges of sections 1346(a)(2) and 1491(a)(1) if, as the Federal Circuit has found, that was not within the meaning of those provisions.

paragraph 2, "Legal Status,"[5] and paragraph 21, "Disputes."[6] Contract ¶¶ 2, 21(b)(2). The Federal Circuit, however, rejected a similar argument in *Pacrim Pizza* and refused to use estoppel to prevent the Government from challenging the court's jurisdiction. *Pacrim Pizza,* 304 F.3d at 1294. The Federal Circuit first found that a Legal Status provision containing language identical to that in the Contract was not operative because the Contract Disputes Act was inapplicable. It then found that the Disputes provision was unenforceable because "only Congress can grant waivers of sovereign immunity; parties may not by contract bestow jurisdiction on a court." *Pacrim Pizza,* 304 F.3d at 1294 (citations omitted). As in that case, the jurisdictional limits at issue in the current action were established by Congress and embodied in statute, and they cannot be modified or enlarged by contract. *See Furash & Co. v. United States,* 46 Fed.Cl. 518, 525–26 (2000), *aff'd,* 252 F.3d 1336 (Fed.Cir. 2001).

As sympathetic as this Court may be to the plaintiff's arguments, they cannot create in this Court the power to expand its jurisdiction beyond that which has been granted to it by Congress. In this regard, it is important to note that Congress, upon perceiving that private parties contracting with NAFI's were sometimes left without a remedy for damages against the United States when the NAFI was in breach of contract, amended the Tucker Act in 1970 to include within the Court's jurisdiction specific provision to pay for the liabilities of certain NAFI's. 28 U.S.C. §§ 1346(a)(2), 1491(a)(1). The NAFI's for whose actions the United States would be liable were limited, however, to the Armed Forces Exchanges and the Exchange Councils of NASA. 28 U.S.C. §§ 1346(a)(2), 1491(a)(1). The intention of Congress was to except these particular NAFI's from the general rule that the United States is not responsible for the liabilities

of NAFI's. H.R.Rep. No. 91–933, 91st Cong., 2d Sess. at 3 (1970), reprinted in 1970 U.S.C.C.A.N. 3477, 3479. Unfortunately, the statutory amendment did not provide a forum for *all* NAFI disputes. The specific listing of a group of NAFI's in the 1970 amendment supports the conclusion that the MWR was intended to be excluded. *See* H.R.Rep. No. 91–933, at 3, 1970 U.S.C.C.A.N. at 3479; *Lion Raisins, Inc. v. United States,* 58 Fed.Cl. 391, 396–97 (2003) (*"Lion Raisins II"*); *Furash,* 252 F.3d at 1339. Indeed, in construing the NAFI doctrine after the 1970 Tucker Act amendment, the Federal Circuit has held that "Congress intended to leave the doctrine intact for all other non-appropriated fund instrumentalities * * *." *Furash,* 252 F.3d at 1339.

In order for this Court to find a grant of jurisdiction over suits against other NAFI's, like MWR, Congress would first have to return to section 1491 and provide jurisdiction to hear those cases. *See* 28 U.S.C. § 1491(a)(1); *Lion Raisins II,* 58 Fed.Cl. at 397–98. As both the Supreme Court and the United States Court of Claims, this Court's predecessor, have recognized, despite the hardship created by the nonappropriated funds doctrine, " 'it is up to Congress to remedy this apparent harsh result ... [T]he court should refrain from legislating by judicial fiat.' " *AINS,* 56 Fed.Cl. at 529 (citations omitted).

As a result, this Court finds that the plaintiff has failed to meet its burden of establishing that the Court of Federal Claims has subject matter jurisdiction over the plaintiff's claims. Thus, the next question is whether to transfer the instant action rather than to dismiss it.

**II. The Plaintiff's Motion to Transfer**

"If this Court should determine that it lacks jurisdiction, Plaintiff respectfully requests that the Court transfer this matter to

---

**5.** Paragraph 2, in relevant part, states that "MWR contracts are United States contracts; however, they do not obligate appropriated funds of the United States except for a judgment or compromise settlement in suits brought under provisions of the Contract Disputes Act * * *." Contract ¶ 2.

**6.** Paragraph 21(b)(2) states that "Within 12 months from the date of contractor's receipt of the contracting officer's Final Decision, contractor brings an action in the United States Claims Court [the predecessor of this Court]." Contract ¶ 21(b)(2).

the District Court of South Carolina. Transfer from this Court to a federal district court may be effected pursuant to 28 U.S.C. § 1631, which allows an action to be transferred to an appropriate district court, if jurisdiction is found to be lacking." Pl.'s Mot. to Transfer (Pl.'s Br. in Opp'n at 7–8). That is the full extent of the plaintiff's motion to transfer.

The defendant argues that the plaintiff's motion should be denied. Its argument is that the plaintiff has failed to show that the district court has probable jurisdiction to entertain the contract claim. Def.'s Reply at 8 (citing *Sanders v. United States*, 34 Fed.Cl. 75, 81 (1995), *aff'd*, 104 F.3d 376 (Fed.Cir. 1996) ("[A] plaintiff must make a showing that there is probable jurisdiction in the district court."); *Jackson v. United States*, 10 Cl.Ct. 691, 695 (1986) (refusing to transfer case where statute of limitations had run because transfer would be a "futile act")). The defendant also argues that "given the nature of the jurisdictional deficiency in this case-*i.e.*, Congress did not waive sovereign immunity-Marriott will not be able to show that the district court possess[es] jurisdiction." Def.'s Reply at 8.

█ Courts have the authority and duty to transfer a case under 28 U.S.C. § 1631, which provides in relevant part:

> Whenever a * * * court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action * * * to any other such court in which the action * * * could have been brought at the time it was filed * * *.

28 U.S.C. § 1631. Thus, under section 1631, a court may transfer a case to another federal court of competent jurisdiction, if a plaintiff can establish each of the following three elements: (1) the transferor court lacks subject matter jurisdiction; (2) at the time the case was filed, it could have been brought in the transferee court; and (3) such transfer is in the interest of justice. *See Rodriguez v. United States*, 862 F.2d 1558, 1559–60 (Fed. Cir.1988); *United States v. John C. Grim-*

berg Co., 702 F.2d 1362, 1374 (Fed.Cir.1983); *Bienville v. United States*, 14 Cl.Ct. 440, 443–44 (1988). Whether transfer would be in the interest of justice turns on the peculiar facts and circumstances of each case. *Id.* at 445.

This Court already has determined that it does not have jurisdiction over the plaintiff's breach of contract claim. Thus, the first of the three elements has been established.

█ To establish the second element, a plaintiff must make a showing that there is probable jurisdiction in the district court. *Sanders v. United States*, 34 Fed.Cl. 75, 81 (1995). This showing does not have to be conclusive, nor is it binding upon the transferee court. *Id.* A court may "decline[ ] to order a transfer when it [is] clear that the transferee court did not have jurisdiction." *Jackson v. United States*, 10 Cl.Ct. 691, 695 (1986). In *Jackson*, the court refused to transfer a claim when it was clear that the statute of limitations had run. *Id.; see also Little River Lumber Co. v. United States*, 7 Cl.Ct. 492, 494 (1985) (holding that "[i]f the District Court most probably would lack, or find a lack of jurisdiction over the case then the case should not be transferred * * *."). Moreover, as the United States Court of Claims indicated, before ordering a transfer "we must at least ask whether a plaintiff has a reasonable chance of persuading the district court that it has jurisdiction." *C.J. Dugan & Otero Mills, Inc. v. United States*, 227 Ct.Cl. 613, 616, 652 F.2d 70 (1981). This procedure was applied in *Williams v. United States*, 11 Cl.Ct. 189, 191–92 (1986), *aff'd without opinion*, 818 F.2d 877 (Fed.Cir. 1987), in which the court declined to transfer a case because the plaintiff's failure to exhaust his administrative remedies precluded the finding of jurisdiction in any federal court.

Marriott has not made the requisite showing under section 1631. That is, it has not shown that such transfer "is in the interest of justice," and that the district court's jurisdiction is proper.[7] Further, this Court believes

---

7. Section 1631 is not a jurisdictional grant; it merely permits the transfer of an action to a court in which the action could have been

brought at the time it was filed. *Orona v. United States*, 4 Cl.Ct. 81, 84 (1983). Thus, the plaintiff did not meet its burden of showing that there is

that the plaintiff would be unable to show that the district court has probable jurisdiction. *See Research Triangle Inst. v. Board of Governors of Fed. Reserve Sys.*, 962 F.Supp. 61, 63–64 (M.D.N.C.1997) (dismissing plaintiff's contract claim against NAFI for lack of subject matter jurisdiction because plaintiff failed to show that Congress clearly and explicitly waived sovereign immunity in contract actions involving NAFI's other than military exchanges excepted in the Tucker Act or the CDA), *aff'd*, 132 F.3d 985 (4th Cir.1997), *cert. denied*, 525 U.S. 811, 119 S.Ct. 44, 142 L.Ed.2d 34 (1998).

Justice has no interest in causing hardship to a party who has sought relief in good faith in a court under the belief that it held jurisdiction, as Marriott seemingly did in the instant action. As a general matter therefore, transfer, rather than dismissal, often serves the interest of justice. But the United States and its agencies enjoy sovereign immunity, which has not been waived with respect to contract actions brought by NAFI's, like MWR, that are not listed in sections 1346(a)(2) and 1491(a)(1); thus, transfer would be futile. *See Research Triangle Inst.*, 962 F.Supp. at 63–64; *see also Pacrim Pizza*, 304 F.3d at 1294. This Court concludes, therefore, that transfer would not be in the interest of justice and, accordingly, denies the plaintiff's motion to transfer.

### III. The Plaintiff's Motion to Reinstate Its Takings Claim

In the event the Court finds that it lacks jurisdiction over the plaintiff's breach of contract claim, as it has, the plaintiff also has moved for reinstatement of the previously dismissed Fifth Amendment takings claim. The plaintiff argues that if the breach of contract claim is dismissed and the takings claim is not reinstated then the "Plaintiff would be left without any adequate remedy under the law to pursue its claims." Pl.'s Mot. to Reinstate at 2. The plaintiff makes no other legal arguments and provides no legal authority to support its motion.

The defendant opposes the plaintiff's motion for reinstatement. The defendant makes several arguments to support its position that there is no basis for reinstating the plaintiff's takings claim. First, the defendant asserts that this Court "properly dismissed the takings claim as a recharacterization of the contract claim" and that a takings claim may not be simply substituted for the breach of contract claim. Def.'s Resp. At 3–4. Second, it asserts that the plaintiff's motion should be denied "[b]ecause this Court would not possess jurisdiction to entertain [the plaintiff's] takings claim, even if it could be reinstated * * *." Def.'s Resp. at 7; *see id.* 4–7. Next, the defendant argues that the plaintiff's claim is substantively based in contract, and thus, a takings claim may not be properly asserted as an independent basis for recovery or as an independent basis upon which this Court may properly exercise jurisdiction. Finally, the defendant accurately notes that the plaintiff "does not assert error in, or challenge the basis for, the earlier dismissal of its takings claim. Further, [the plaintiff] fails to demonstrate how the dismissal of its contract claim would render incorrect any [of] this Court's previous findings." Def.'s Opp'n at 7–8.

■ This Court does not have jurisdiction to adjudicate a Fifth Amendment takings claim asserted against a NAFI that is not listed in sections 1346 and 1491(a)(1). *Lion Raisins II*, 58 Fed.Cl. at 396–98; *Lion Raisins, Inc. v. United States*, 57 Fed.Cl. 435, 437–39 (2003) ("*Lion Raisins I*"). In *Lion Raisins I*, the plaintiff filed an amended complaint substituting a Fifth Amendment takings claim for its original contract claim against the United States for an alleged taking of property without just compensation by a NAFI that is not listed in sections 1346 and 1491(a)(1). The plaintiff, relying upon the "self-executing" aspects of the Fifth Amendment with respect to entitlement to just compensation for a taking, asserted that the Court of Federal Claims had jurisdiction over the takings claim. The *Lion Raisins I* court rejected that position noting that "[t]his feature of the Fifth Amendment does not [ ] provide the express grant of jurisdiction to this Court which is required for the entry of a judgment on a claim against a

probable jurisdiction in the district court merely by citing to that provision.

NAFI not listed in 28 U.S.C. § 1491(a)(1)." *Lion Raisins I*, 57 Fed.Cl. at 437. It noted further that "[w]ithout legislation providing jurisdiction to a tribunal to award just compensation for property taken, the Fifth Amendment simply establishes the right to compensation but not the remedy." *Id.* The court found no legislative provision providing the Court of Federal Claims jurisdiction to entertain the NAFI-based takings claim. *Id.* Thus, as the plaintiff's claims were asserted against a NAFI not listed in section 1491(a)(1), the court held that the Court of Federal Claims did not have jurisdiction to resolve the plaintiff's claims "whether presented as contract or taking matters," and it dismissed the amended complaint. *Id.* at 439.

In *Lion Raisins II*, a Fifth Amendment takings claim brought against a NAFI not listed in section 1491(a)(1) again was dismissed for lack of subject matter jurisdiction. Among the arguments considered as a basis for jurisdiction and rejected by the *Lion Raisins II* court was the plaintiffs' argument that they would be "left without a remedy if the court finds that the Tucker [Act] does not extend to their suit," noting that "it is Congress, not the courts, which determines what types of cases the federal courts may hear." *Lion Raisins II*, 58 Fed.Cl. at 397. The *Lion Raisins II* court expressly adopted the reasoning of the *Lion Raisins I* court and held "that the Tucker Act does not extend its general waiver of sovereign immunity to NAFIs [not listed in sections 1346 and 1491(a)(1) ]." *Id.* at 398.

The intent of Congress not to allow the Court of Federal Claims to hear cases against NAFI's like MWR is determinative. As this Court has not been granted jurisdiction to entertain the plaintiff's Fifth Amendment takings claim, Plaintiff's Motion to Reinstate Claim is denied.

In dismissing the plaintiff's breach of contract claim, rejecting its request to transfer this action, and denying its motion to reinstate its takings claim, this Court recognizes the hardship this may create because it may deny a forum in which to vindicate a valid claim. But it is not the proper duty or role of this Court to act as a super-legislature and attempt to cure the ills of a constitutional democracy. *See Denkler v. United States*, 782 F.2d 1003, 1007–08 (Fed.Cir.1986).

### CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Surviving Claim is GRANTED. Plaintiff's Motion to Transfer and Plaintiff's Motion to Reinstate Claim are DENIED.

The Clerk of the Court shall enter judgment dismissing the Complaint for lack of subject matter jurisdiction.

Each party shall bear its own costs.